### B. M. BAILEY v. THE STATE.

No. 1374. Decided November 15, 1911.

Rehearing denied December 13, 1911.

**1.—Incest—Indictment—Misspelling—Words and Phrases.**

Where the indictment for incest set out the offense in ordinary and concise language, and with such a degree of certainty as to give defendant notice thereof and enable him to plead the same in bar of any other prosecution for the same offense, the same was sufficient, although the word "carnally" was spelt "canally."

**2.—Same—Indictment—Niece.**

Where the indictment for incest clearly showed that the female upon whom the alleged incestuous intercourse was had was defendant's niece, the same was sufficient.

**3.—Same—Indictment—Marriage.**

In an indictment alleging incestuous conduct between defendant and his niece, it was not necessary to allege that her parents were lawfully married, or to give their names, or to allege that she was the lawful daughter thereof.

**4.—Same—Evidence—Argument—Discretion of Court—Imputing Crime to Another.**

Upon trial of incest, when the State's counsel was about to close his argument, there was no error in not permitting the defendant to introduce testimony

that the privates of his son had been examined by a physician and indicated that the said son must have had carnal intercourse, and that the circumstances raised the issue that said son and not the father was guilty of the incest; it appearing to the trial judge that such testimony at that period of the trial was not necessary to a due administration of justice, and that he had not abused his discretion.

**5.—Same—Sufficiency of the Evidence.**

Where, upon trial of incest the evidence sustained a conviction, there was no error.

Appeal from the District Court of Comanche.   Tried below before the Hon. J. H. Arnold.

Appeal from a conviction of incest; penalty, six years imprisonment in the penitentiary.

The opinion states the case.

*G. E. Smith,* for appellant.—Upon question of court's refusal to admit testimony that another person committed the offense: Dubose v. State, 10 Texas Crim. App., 230; Jackson v. State, 67 S. W. Rep., 497; Kunde v. State, 3 S. W. Rep., 330; Murphrey v. State, 35 S. W. Rep., 174; Wheeler v. State, 54 Texas Crim. Rep., 47, 121 S. W. Rep., 166; Blocker v. State, 55 Texas Crim. Rep., 30, 114 S. W. Rep., 814; Castileo v. State, 69 S. W. Rep., 517.

*C. E. Lane,* Assistant Attorney-General, for the State.

PRENDERGAST, JUDGE.—The following is the indictment in this case, to wit:

"In the name and by the authority of the State of Texas:

"The grand jurors, for the County of Comanche, State aforesaid, duly organized as such at the April term, A. D., 1911, of the District Court for said county, upon their oaths in said court, present that B. M. Bailey on or about the 17th day of August, A. D., One thousand nine hundred and ten, and anterior to the presentment of this indictment, in the county of Comanche and State of Texas, did then and there unlawfully, *canally* know, and incestuously have carnal knowledge of Satsey Bailey; the said Satsey Bailey then and there being the daughter of the brother of him, the said B. M. Bailey, to wit: the daughter of J. J. Bailey being then and there the brother of him, the said B. M. Bailey, in this, that B. M. Bailey and J. J. Bailey were children of the same father and mother, against the peace and dignity of the State.

"E. B. Dewey,<br>Foreman of the Grand Jury."

Under this indictment, the appellant was tried, found guilty, and his penalty fixed at six years in the penitentiary.

The appellant made a motion, which was overruled and to which he

excepted, to quash the said indictment on these grounds: (1) Because it failed to charge a violation of the law. (2) It does not allege that the defendant did *carnally* know Satsey Bailey, but instead alleges that defendant did *"canally know"* her, the word *"canally"* being insufficient to show that defendant *carnally* knew her. (3) Because it is insufficient wherein the following language is used: "The said . J. J. Bailey being then and there the brother of him, the said B. M. Bailey in this, that B. M. Bailey and J. J. Bailey were children of the same father and mother." Said allegation being defective (a) in that it does not refer to or identify B. M. Bailey as the defendant, nor does it disclose that J. J. Bailey, therein mentioned, was the brother of the defendant; (b) it does not disclose that B. M. Bailey and J. J. Bailey were lawful issue of the same parents; (c) it does not allege that there was a lawful marriage of the father and mother therein mentioned; (d) it does not allege the name of the father and mother of B. M. Bailey and J. J. Bailey. (4) It does not allege that Satsey Bailey was the lawful daughter of the said J. J. Bailey and does not allege the name of the mother of Satsey, or a lawful marriage of her parents.

Article 464, Code Criminal Procedure, says: "An indictment shall not be held insufficient nor shall the trial, judgment or other proceedings thereon be affected by reason of any defect or imperfection of form in such indictment which does not prejudice the substantial rights of the defendant."

Article 441, Code Criminal Procedure, is: "The certainty required in an indictment is such as will enable the accused to plead the judgment that may be given upon it, in bar of any prosecution for the same offense." Article 448, Code Criminal Procedure, is: "An indictment for any offense against the penal laws of this State shall be deemed sufficient which charges the commission of the offense in ordinary and concise language in such a manner as to enable a person of common understanding to know what is meant, and with that degree of certainty that will give the defendant notice of the particular offense with which he is charged, and enable the court, on conviction, to pronounce the proper judgment." . . .

The definition of incest (Penal Code, arts. 349-350) substantially is that any man who shall carnally know his brother's daughter is guilty of incest.

It has all the time been held in this State that bad spelling in an indictment will not vitiate it, unless thereby the meaning is obscured or changed. State v. Earp, 41 Texas, 487; Thomas v. State, 2 Texas Crim. Rep., 293; Stinson v. State, 5 Texas Crim. App., 31; Somerville v. State, 6 Texas Crim. App., 433; Hudson v. State, 10 Texas Crim. App., 215; Witten v. State, 4 Texas Crim. App., 70; Hutto v. State, 7 Texas Crim. App., 44; Irvin v. State, 7 Texas Crim. App., 109; State v. Morris, 43 Texas, 372; State v. Williamson, 43 Texas, 500; Hennessey v. State, 23 Texas Crim. App., 340; Keller v. State, 25

Texas Crim. App., 325; Brumley v. State, 11 Texas Crim. App., 114; Taylor v. State, 29 Texas Crim. App., 466; Williams v. State, 35 Texas Crim. Rep., 391.    Many other cases might be cited, but we deem it unnecessary.

Appellant, in his brief, contends that there is no such word as "canally." We agree with him. We have been unable to find any such word.

As to verdicts, the decisions of this court are to the effect that they are to have a reasonable intendment and construction, and are not to be avoided, unless from necessity originating from doubt of their import, and that in construing them, the object is to arrive at the meaning of the jury. Where the sense of a verdict is clear, it is to be reasonably construed, and neither incorrect orthography, nor ungrammatical language will render it illegal or void. Misspelling does not vitiate a verdict when no doubt can be entertained as to the words intended, or as to their meaning. See sec. 907, White's Code Criminal Procedure, 1907 edition, p. 579, for a collation of the authorities on this subject.

It is perfectly clear that the word "canally" was intended for "carnally," the letter "r" having been omitted in the first syllable of the word. The words following this misspelled word in the indictment, taken together with the few words preceding this misspelled word, renders it beyond question that the word "canally" in the indictment was intended to be "carnally." The words preceding and immediately succeeding, including this misspelled word, are "did then and there unlawfully, canally know, and incestuously have carnal knowledge of." The misspelling of this word could not and did not prejudice the substantial rights of the defendant and there can be no doubt that the certainty in this indictment will enable the accused to plead the judgment that may be given upon it in bar of any prosecution for carnally knowing the said Satsey Bailey, if prosecuted again for the same offense, and that the charge of the offense in this case is in such ordinary and concise language as to enable a person of common understanding to know what is meant, and that it is with that degree of certainty that gave the defendant notice of the particular offense with which he is charged and it also enabled the court to pronounce the proper judgment of conviction against him.

The other grounds of the motion to quash the indictment are as wholly insufficient as the one discussed above. The indictment clearly shows that Satsey Bailey was the appellant's niece, the daughter of his brother, J. J. Bailey, and that the appellant and said J. J. Bailey were children of the same father and mother. It was not necessary for the indictment to allege that the said B. M. and J. J. Bailey were lawful issue of their parents, nor that there was a lawful marriage of their parents. Neither was it necessary for the indictment to give the name of the mother of said Bailey, nor was it necessary for the indictment to allege that Satsey Bailey was the lawful daughter of

J. J. Bailey, nor was it necessary for the indictment to give the name of her mother, or that she was born of a lawful marriage of her parents.

Another complaint of appellant is shown by a bill of exceptions. It is unnecessary to quote the bill, as it is quite lengthy, but we will give the full substance thereof. It shows that after the testimony for both parties had been closed and the opening argument of the county attorney, followed by the concluding argument of the appellant's attorney, and while the State's attorney was making his closing argument to the jury, and just before he concluded, the appellant requested the court to permit him to reintroduce Dr. Self, who had testified, and have him testify substantially as follows: That some time during the first of September, 1910, J. J. Bailey, one of the State's witnesses, who testified in the case, the father of Satsey Bailey, and his son, Carrol Bailey, who was then eighteen or nineteen years of age, called at his office in DeLeon, where he was a practicing physician and had practiced for more than eight years, to examine and treat said Carrol; that he examined him and found a very much inflamed prepuce or foreskin which showed that a part of the foreskin had been torn away from the penis and had produced a swelling of the foreskin and connecting tissues; that such condition is usually caused by excessive intercourse; that at the time he, said Dr. Self, inquired of Carrol if he had been away from home running around with any women. Carrol replied that he had not been away from home; that his father, said J. J. Bailey, confirmed Carrol's statement, and that in said conversation, Carroll told the doctor that his penis had been in that condition for a week or two, and in the doctor's opinion this condition was caused or brought about by excessive intercourse by Carrol. He then fixed the time as during the first week in September, 1910, by the fact that he, the doctor, had had a spell of sickness during that first week of September and was unable to drive into the country to visit his patients, but sat about his office doing office practice at that time and he remembered this fact distinctly.

The bill also shows that the doctor had testified on the trial as a State's witness and had been fully crossed by the appellant; that during none of this time did the visit of Carrol and his father or his examination of Carrol's penis occur to him and not until the appellant's attorney was addressing the jury, when it did occur to him, and that he afterwards and before the State's attorney had concluded his final argument, told the appellant's attorney.

The appellant's attorney, as a part of this bill, attached his affidavit showing that he did not know of this testimony and had nothing to arouse his suspicions about any such testimony by the doctor until the time above shown, when the doctor communicated it to him, and the affidavit of the appellant himself is made a part of it to the same effect.

The court, in allowing the bill, made this qualification and explana-

tion: "Offer to put this witness back upon the stand was made as
district attorney was saying his last words in argument to the jury,
but just before he had concluded, witness had been in attendance on
court all day and I presume, had talked privily with counsel in view
of these facts and the further conjectural character of the testimony,
I did not feel that my discretion should be used in allowing the witness
to testify after practically all the argument for both sides had been
made, and I have been confirmed in such view by the showing made in
contest of motion for new trial, filed by the State, showing condition
of Carrol Bailey to have been produced by other causes, than inter-
course with prosecutrix."

The appellant made the matter complained of in this bill one of
the grounds of his motion for new trial. The record shows that the
county attorney contested particularly this ground of appellant's mo-
tion for new trial and that the court heard the affidavits of said Dr.
Self, the appellant, and his attorney, and the affidavits of Carrol
Bailey and his father, J. J. Bailey, C. S. Bell, deputy sheriff of
Comanche County, and E. B. Jordan.

The State's attorney in his contest of this ground of appellant's
motion for new trial, in substance, shows that the testimony of said
doctor sought to be introduced at the close of the case, as shown above,
was (1) immaterial, irrelevant and would have thrown no light on
the guilt or innocence of appellant; (2) because there was no fact or
circumstance in the record, either by direct or circumstantial evidence,
showing or tending to show that Carrol Bailey had had sexual inter-
course with his sister Satsey, but on the other hand, the testimony
of Satsey absolutely and unconditionally negatives that any person
other than the appellant ever had intercourse with her; (3) he denied
that such evidence would have been any defense for appellant and he
claimed that such testimony by the doctor was untrue and would prove
it by the affidavits of other parties hereinabove stated, and that under
all the circumstances of this case, the court did not abuse its discretion
in refusing, at that late time, to hear the testimony of said doctor,
because it was necessary to a due administration of justice and that the
judge did not abuse his discretion, but exercised a proper discretion
in refusing to hear it at the time.

The county attorney, in his opposition to this ground of appellant's
motion for new trial, goes further into detail in contesting it, and
supports the court's ruling by other and additional grounds of contest
of appellant's motion, unnecessary to further state here.

The testimony of J. J. Bailey, by his affidavits, heard by the court in
passing upon the said motion for new trial, shows that he did take
his son to Dr. Self for examination and treatment, substantially as
shown by Dr. Self in his affidavit, but he and his son, too, by his
affidavit, are very positive that this occurred, not in September, 1910,
as shown by the doctor's affidavit, but in December, 1909, and they fix
the date in most positive and unconditional terms, by showing that it

was while J. J. Bailey lived at a certain place and that in January following, he removed to the place he was living when appellant is charged to have committed the crime of which he was convicted. They both fixed the time all this occurred with all of the circumstances and positiveness that it could be done.

The testimony of C. S. Bell, heard by the court on the hearing of this motion by affidavit, shows that on March 15, 1911, when he arrested the appellant on the charge in this case, the appellant immediately insisted upon making a statement to him concerning the matter about which he was arrested; that Bell told him that he did not want to hear him and not to make a statement, but that appellant insisted upon doing so and did do so. That he then and there stated to Bell that he was at his brother, J. J. Bailey's home, on or about August 17, 1910; that his brother was away from home that night and that he, appellant, did play with, fondle and caress Satsey Bailey, the daughter of his brother, then about fifteen years of age, and that he finally got her down on a cot and rubbed his penis on her private parts and continued to do so until a discharge was effected by him, but that he did not penetrate her private parts; that after appellant made this statement to him he asked appellant if he supposed any other man had ever had intercourse with said Satsey, and he replied that he did not believe that any other man had ever had intercourse with her and he further stated that what he had said was true and that he did not intend to deny it in court.

The testimony of said Jordan, by his affidavit, heard by the court on said motion for new trial, showed that while he was subpoenaed as a witness in appellant's case on behalf of the State, he did not testify, but that he heard the appellant say after he was arrested and while he was in the calaboose at DeLeon on or about March 15, 1911, that some time on or about August 17, 1910, he played with and fondled the person of Satsey Bailey, the daughter of his brother, J. J., and that he, appellant, rubbed his penis around the private parts of the said Satsey until he had a discharge.

Article 698, Code Criminal Procedure, is: "The court shall allow testimony to be introduced at any time before the argument of a cause is concluded, if it appear that it is necessary to a due administration of justice." Questions of the introduction of testimony under this statute have frequently arisen in cases before this court. The principles announced by this court therein have been and are that the admission of such testimony, under such circumstances as disclosed in this case, is within the sound discretion of the trial judge and this discretion will not be revised, unless it clearly appears to have been abused and that a refusal to permit testimony at that stage will not constitute reversible error unless it is shown that defendant has been prejudiced thereby. This is the case whether the court admits or excludes the offered testimony. Dement v. State, 39 Texas Crim. Rep., 271; Gonzales v. State, 32 Texas Crim. Rep., 611; Malley v. State,

28 Texas Crim. App., 387; Hendricks v. State, 28 Texas Crim. App., 416; Farris v. State, 26 Texas Crim. App., 105; Testard v. State, 26 Texas Crim. App., 260; Timbrook v. State, 18 Texas Crim. App., 1; Nolen v. State, 14 Texas Crim. App., 474; George v. State, 11 Texas Crim. App., 95; Moore v. State, 7 Texas Crim. App., 14; Noftsinger v. State, 7 Texas Crim. App., 301; Phillips v. State, 6 Texas Crim. App., 44; Reardon v. State, 4 Texas Crim. App., 602; Jones v. State, 3 Texas Crim. App., 150. We deem it unnecessary to cite other cases. The court did not commit reversible error under the circumstances shown in this case in refusing to permit Dr. Self to testify as offered by appellant.

The appellant's only other ground of complaint is that the evidence does not justify the verdict. He puts this on two grounds. First, the insufficiency as to the evidence as a whole; and, second, because the witness, Satsey Bailey, was not sufficiently corroborated.

We have carefully gone over the evidence in this case and considered all of it. It is our opinion that the evidence is amply sufficient to sustain the conviction and that the prosecuting witness was also amply sufficiently corroborated.

The appellant makes vigorous attacks on the testimony of the prosecuting witness as to the unreasonableness in certain particulars of her testimony and of some slight contradictions of her by others on what we think, more properly considered, are immaterial matters. All these questions were for the jury and were doubtless fully and thoroughly discussed by appellant's able attorney who represented him. Without going into the details of her testimony, it fully establishes the charge against appellant. The appellant did not testify, except by affidavit in support of his motion for new trial on the ground of the introduction of the testimony of Dr. Self, shown by his bill. His affidavit in this respect was to the effect solely and simply that he knew nothing of what he offered Dr. Self to prove as to the condition of Carrol Bailey, the brother of Satsey, until it was disclosed by him (the doctor) about the time of the close of the trial of his case. The prosecuting witness was corroborated by the birth of the child, proven not only by herself, but others, nine months after August 17, 1910; that the appellant stayed all night at her father's house, August 17, 1910; that her father was away from home that night and that she slept at a place where the appellant could have had sexual intercourse with her; that she had no sweetheart, had not at any time been with or about any men or boys who could have had any opportunity to have intercourse with her. We believe that the record shows not a scintilla of testimony that her brother Carrol had intercourse with her. The appellant was, within about a month after his intercourse with his niece, informed of the fact that she had missed her menses. About that time, he worked in a drug store in DeLeon, eight miles from where she lived; that he was repeatedly informed afterwards that her menses had not appeared, sometimes the information appears to have

been communicated to him by her father or mother, without his soliciting the information; at other times he inquired about it; that he furnished her medicine on about three different occasions about a month apart for the purpose of bringing on her menses. Two of these times there was no concealment about it, but the medicine was sent to her by him by her father. At another time he is shown to have taken her medicine himself and had her to take it without the knowledge of her father, or her mother, that he was either taking the medicine to her or that he had given it to her. Her father and mother were not aware of her condition of pregnancy until perhaps about two months before the birth of her child. The appellant knew it and told Dr. Self of the fact, as testified to by Dr. Self, as early as January, 1911, and told the doctor at that time that they were keeping it from her father. The occasion for his telling Dr. Self this at that time was that Dr. Self had been consulted about her menses being suppressed, and had sent her medicine before that, but that she was to be examined that day by Dr. Self to ascertain what her condition was. The appellant came in the wagon with his niece and his brother, from their home, eight miles to DeLeon, but when they stopped to hitch the horses and got out, he preceded them, stating that he was going to the post-office to get his mail, but instead, reached the doctor's office before they did and told the doctor of her condition and to keep it from her father. The doctor, on this occasion, made the examination, ascertained the fact that the girl was pregnant, but withheld the information from her father. We deem it unnecessary to further state what the evidence tended to prove.

There being no reversible error, the judgment will be affirmed.

*Affirmed.*