### W. F. MORRIS v. THE STATE.

#### No. 3033. Decided December 7, 1904.

**1.—Perjury—Indictment—Date of Offense.**

Where the indictment alleged the date of the commission of the offense to be "on or about the 22d of October, one thousand nine hundred three," it was sufficient, as the language if transposed into figures would be 1903.

**2.—Same—Jurisdiction of Court Should be Properly Alleged—Justice of the Peace.**

The indictment charged that the alleged false oath was made before a justice of the peace sitting as a "court of inquiry," a proper allegation should have been that said justice having good cause to believe that an offense against the law of the State had been committed in said county, to wit: theft of certain cotton seed, etc., and having jurisdiction to examine into the same, caused said M. to come before him as a witness, etc., following the language of the statute.

**3.—Same—Materiality of Statement Must be Alleged.**

An indictment for perjury assigned upon the false testimony of defendant before a justice of the peace examining into a case of theft which alleged the materiality of such theft, but failed to allege the materiality of the false testimony set out is fatally defective.

**4.—Same—Particular Assignment Necessary.**

An indictment for perjury which sets out the whole affidavit without setting out the particular portion upon which perjury is assigned is defective, and an assignment covering the entire affidavit, if practicable, must be substantially proven. Where part of such affidavit was true and part false, that portion only upon which the prosecution could be sustained should have been assigned and its materiality alleged.

**5.—Same—Charge of Court—Circumstantial Evidence.**

Where in a case of perjury the evidence is wholly circumstantial, the court should have instructed the jury on the law of circumstantial evidence.

**6.—Same—Credibility of Witness.**

Where testimony was introduced to impeach one of the State's witnesses, the court should have submitted a requested instruction as to the definition of a credible witness.

Appeal from the District Court of Fisher. Tried below before Hon. H. R. Jones.

Appeal from a conviction of perjury; penalty, two years imprisonment in the penitentiary.

The gist of the State's testimony was that the defendant had made a sworn written statement before a justice of the peace, who was holding an examining court to inquire into the theft of some cotton seed; that Rastus Davis had rode up to where defendant and one Will Kluting were stopping for lunch and feeding their horses; that Davis was riding one of Kluting's horses; that Kluting got on the horse and rode toward his home leaving his wagon with Davis and that then the defendant and Davis got the cotton seed as set out in the indictment. That defendant plead guilty to the theft of the cotton seed, and that on the trial of said Will Kluting for the same offence in the county court, defendant as a witness, swore that the party who rode. up to their camp, or stopping place, was Charley Folson, and that he and defendant took the cotton seed. Defendant also made a written sworn statement before the grand jury that it was Charley Folson who rode up to their camp and that he and defendant took the cotton seed. All of these statements were introduced in evidence by the State. Will Kluting was also introduced and testified that the party who met them in camp was introduced to him by defendant as Charley Folson; that Erastus Davis was his son-in-law and he was positive that this person was not Davis. The State also showed by other testimony that Erastus Davis was at the home of Kluting on the evening and early on the night of the day and night that the cotton seed was alleged to have been stolen; and that this was some ten or twelve miles from the gin where the cotton seed was stolen. The sheriff testified that he did not know Folson or of a man in Fisher County named Charley Folson. It also developed in the testimony that Erastus Davis was charged with the same offense as defendant and Kluting but that he had not been arrested and was still at large. The cotton seed was found in Kluting's dug-out and turned over to the owner. Kluting had been convicted of the theft of the cotton seed when he testified. The cotton seed was stolen at night.

*Woodruff & Hughes,* for appellant.—On the proposition of the insufficiency of the indictment: Buller v. State, 33 Texas Crim. Rep., 551; Anderson v. State, 18 Texas Crim. App., 17. On court's failure to charge on circumstantial evidence: Kemp v. State, 28 Texas Crim. App., 519. On question of credible witness: Wilson v. State, 27 Texas Crim. App., 47; Smith v. State, 22 Id., 196.

*Howard Martin,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of perjury, and his punishment assessed at confinement in the penitentiary for a term of two years; hence this appeal.

Inasmuch, as the disposition of the case depends on the validity of the indictment, we here set out that portion of the same to which objection was made.

The grand jurors present "that on or about the 22nd day of October, One Thousand Nine Hundred three, and anterior to the presentment of this indictment, in the county of Fisher, and State of Texas, before J. B. Green, Justice of the peace in and for precinct No. 1, in Fisher County, Texas, sitting as a court of inquiry for the purpose of disclosing crime, W. F. Morris did then and there present himself and make his personal appearance to testify as a witness before said justice of the peace sitting as a court of inquiry as aforesaid, and J. B. Green, justice of the peace as aforesaid, as he was then and there authorized by law to do, did administer to the said W. F. Morris the oath as witness, said oath being one required by law, and so administered for the ends of public justice, and the said W. F. Morris was then and there duly and legally sworn and did take his corporeal oath as such witness before said justice of the peace sitting as a court of inquiry as aforesaid. Whereupon it then and there became and was a material inquiry before said justice of the peace, sitting as such court of inquiry, and necessary for the due administration of the criminal laws of the State of Texas and the ends of public justice, whether one Erastus Davis in said county and State, on or about the 10th day of October, 1903, did unlawfully and fraudulently take from the possession of H. M. Casper 60 bushels of cotton-seed of the value of ten dollars, the same being the corporeal personal property of the said H. M. Casper, without the consent of the said H. M. Casper, and with the intent then and there to deprive the said H. M. Casper of the value thereof; and with the intent to appropriate the same to the use and benefit of him, the said Erastus Davis. And the said W. F. Morris, as such witness before said J. B. Green, justice of the peace, sitting as a court of inquiry as aforesaid, and under the sanction of said oath so administered to him as aforesaid, on the day and date above written, did deliberately, wilfully and corruptly testify and say, in substance and effect that—'On Saturday, 10th of October, 1903, Will Kluting and I came from Kluting's place with two loads of maize. I saw cotton-seed at Casper's (meaning H. M. Casper) as we came down, and had seen them before. On the next morning, Sunday, we unloaded the maize, attended to some business in Roby, with H. J. Hadderton and B. T. Robins, got through about 4 o'clock p. m. We left Roby a little before sundown. Between the fork of the lane, west of Roby, and the Alkali bridge we met a man in hack, without a top, don't know who he was, on north of this bridge in lane running east and west we fed our horses ear-corn and ate a cold lunch. About ¼ or ½ mile this side of Clear Fork (meaning the Clear Fork of the Brazos River) we met Rastus Davis (meaning Erastus Davis) Kluting's son-in-law, riding one of Kluting's horses. Kluting got on the horse and went on toward home, leaving his wagon with said Davis. Just after we crossed Clear Fork, I saw Casper's cotton-seed, and asked Davis if he thought there was a chance for us to get any seed. He said he thought there was. I asked him if he wanted to get some. He said he didn't give a damn. We then

stopped the wagons, and began packing the seed out to the wagons in two sacks, both of us packed them, using two sacks, etc., etc. Whereas, in truth and in fact as he, the said W. F. Morris, then and there well knew, he did not meet said Erastus Davis riding one of Kluting's horses, as testified to by him, and said Davis did not assist him in taking H. M. Casper's cotton seed, as testified to by him, the said W. F. Morris, and which said statements so made by said W. F. Morris, before said justice of the peace, sitting as a court of inquiry as afore· said, was deliberately and wilfully made, and was deliberately and wilfully false, as he, the said W. F. Morris, then and there well knew," etc.

A number of objections were made to this indictment, and exception reserved to the action of the court overruing the same. We think the court was correct in holding that the date, "on or about the 22nd of October, one thousand nine hundred three," is sufficient. This is not like the case of McCoy v. State, 68 S. W. Rep., 686. In that case, as explained by the court, the date was alleged to be "on or about the 10th of May, one thousand nine and one." This transposed into figures would be 1091, whereas if the language here used were transposed into figures it would be 1903.

By another exception to the indictment it is insisted that the court before whom the alleged false testimony was given is not properly alleged, there being no such court in this State as a "justice of the peace, sitting as a court of inquiry." We presume the proceeding in which the alleged false testimony was given, was had under article 941, Code Criminal Procedure, which provides: "When a justice of the peace has good cause to believe that an offense has been or is about to be committed against the laws of this State, he may summon and examine any witness or witnesses in relation thereof, and if it shall appear from the statement of any witness or witnesses that an offense has been committed, the justice shall reduce said statements to writing, and cause the same to be sworn to by the witness or witnesses making the same; and thereupon such justice shall issue a warrant for the arrest of the offender, the same as if complaint had been made and filed against such offender." We believe that a proper allegation under this statute, to show the jurisdiction of the court, would have been as follows: said justice having good cause to believe that an offense against the laws of the State had been committed in Fisher County, to wit: theft of certain cotton, etc., and having jurisdiction to examine into the same, caused said W. F. Morris to come before him as a witness, etc. Said court, so sitting, might, in common parlance, be termed a court of inquiry to disclose crime, yet the statute does not so term it, and it is always best to follow the language of the statute.

Appellant contends the indictment is not sufficient, because it does not allege the materiality of the false testimony set out, but merely alleges the materiality of the alleged theft. On this proposition we believe appellant is correct. Buller v, State, 33 Texas Crim. Rep., 551;

McMurtry v. State, 38 Texas Crim. Rep., 521; Smith v. State, 1 Texas Crim. App., 620; Brooks v. State, 29 Texas Crim. App., 582.

The indictment is also defective in that there is no particular assignment as to matters contained in the affidavit, but the whole affidavit is presented as a false instrument. The pleader should have set out the particular portion thereof upon which he proposed to assign perjury. Ross v. State, 50 S. W. Rep., 336. In this case the whole affidavit is assigned as perjury. In such case it has been held that if such an assignment can be made and not by separate averments, the whole assignment must be substantially proven. Brown v. State, 48 S. W. Rep., 169. In this particular case, the only portion of said affidavit which appears to have been treated by the court as perjury was that portion which says, appellant testified that as he (appellant) was on his way home from Roby, with one Kluting, they met Erastus Davis (Kluting's son-in-law), and Davis let Kluting take his horse, and Kluting went on home, leaving appellant and Davis with the wagon, and subsequently, after crossing the Clear Fork of the Brazos River, they saw Casper's cotton-seed, and they stopped the wagon and began packing the seed to the wagons in two sacks, both packing them. The preceding part of the affidavit as to going to Roby and return, etc., appears to be true: only the portion above noted seem to have afforded the grounds of this prosecution. This should have been alleged to have been material, and perjury should have been assigned thereon.

Appellant contends that this is a case depending wholly on circumstantial evidence, and therefore the court should have instructed the jury accordingly. We are inclined to agree with this contention, and believe that the charge on circumstantial evidence should have been given.

We hold that the court erred in refusing to give the requested instruction as to a credible witness. Some of the testimony was introduced to impeach one of the State's witnesses, and the requested charge should have been given. Wilson v. State, 27 Texas Crim. App., 47; Smith v. State, 22 Texas Crim. App., 196.

Because the indictment is defective, the judgment is reversed and the prosecution ordered dismissed.

*Reversed and dismissed.*