## W. D. Carpenter v. The State.

### No. 4451. Decided May 9, 1917.

**1.—Perjury—Indictment—Grand Jury—Violation of Law.**

Where, upon trial of perjury, the indictment nowhere alleged that it was the violation of any law for the party making the order to sign the same, etc., which the indictment alleged was the material inquiry before the grand jury, the same was insufficient on motion to quash.

**2.—Same—Rule Stated—Investigation Before Grand Jury—Perjury.**

It is well settled that in an indictment for perjury, alleged to have been committed before a grand jury, the allegations must show that the matter under investigation before the grand jury, was a violation of law; in other words, that what the grand jury was investigating when the alleged false testimony was given before it, was the violation of some law. Following Gallegos v. State, 50 Texas Crim. Rep., 190, and other cases.

**3.—Same—Pleading—Grand Jury—Venue.**

Where, upon trial of perjury, it appeared from the face of the indictment that it contained no specific allegation that the grand jury was investigating whether an offense had been committed in the county of the prosecution, it would be better practice for the indictment to so specifically allege.

**4.—Same—Indictment—Necessary Allegation—Order Should Be Alleged.**

In an indictment for perjury, it is always necessary to allege distinctly and clearly what the false testimony was, which is made the basis of the offense, and then traverse it, and other preliminary matters in connection with said false testimony should not be confused with that which is made the basis for perjury. It is also best to copy in the indictment the alleged forged order.

Appeal from the District Court of Comanche. Tried below before the Hon. J. H. Arnold.

Appeal from a conviction of perjury; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Smith & Palmer,* for appellant.—On question of insufficiency of the indictment: Laird v. State, 79 Texas Crim. Rep., 129, 184 S. W. Rep., 810; Waddle v. State, 69 Texas Crim. Rep., 334; Scott v. State, 75 Texas Crim. Rep., 396, 171 S. W. Rep., 243; Lowe v. State, 59 Texas Crim. Rep., 557, 129 S. W. Rep., 843, and cases cited in opinion.

*E. B. Hendricks,* Assistant Attorney General, for the State.—On question of the sufficiency of the indictment: Rahm v. State, 30 Texas Crim. App., 310; Massie v. State, 5 id., 81; West v. State, 8 id., 119; Watson v. State, 5 id., 11; Buller v. State, 33 Texas Crim. Rep., 551; Waul v. State, 33 id., 228; Davis v. State, 14 Texas Crim. App., 645.

PRENDERGAST, JUDGE.—Appellant was convicted of perjury alleged to have been committed before a grand jury and assessed the lowest punishment.

The only question necessary to be decided for the final disposition of this cause is, whether the indictment is fatally defective. Appellant

made a motion to quash it on many grounds. It is unnecessary to state them. We will discuss only some of them. To do this, it will be necessary to copy the material allegations.

The necessary preliminary allegations as to the organization of the grand jury which preferred this indictment are in the usual form. Also the allegations as to the court, the officers thereof, the organization of the grand jury, the administration to appellant of the oath prescribed by law by the foreman at the term and time when appellant is alleged to have appeared and testified before it, are properly alleged, and as no question is raised thereabout; it is unnecessary to copy that part of the indictment. After all these necessary proper allegations in regular and due form, the indictment alleges:

"Whereupon it then and there became and was material inquiry before said grand jury, and necessary for the due administration of the criminal laws of the State of Texas and the ends of public justice, whether one Jack Jenkins in said county and State of Texas on or about the 26th day of May, A. D. 1915, did sign and make a written order purchasing 1650 apple trees, and ordering same for fall delivery, from Hoffman Nurseries of Denton, Texas, promising and agreeing in said order to pay the sum of one hundred and sixty-five dollars for said apple trees upon their delivery to him as specified in said contract.

"And the said W. D. Carpenter, as such witness before said grand jury and under the sanction of said oath so administered to him, as aforesaid, on the day and date first above written, did deliberately, wilfully and corruptly say and testify, in substance and effect, that: 'In about March, 1915, I sold Jack Jenkins a bill of pecan trees amounting to $22.50, I think, and at that time he told me that he had about twenty-three or twenty-four acres of land that he wanted to set in apples, and I took some of the soil and sent it to A. and M. College to have an analysis made of it, and it came back and I was down there about May the 18th to show him the analysis of the soil. It was in the fore part of the day I was over there, and when I showed him the analysis he said he would like to make the order, but would like to wait until he could see further about his crops. I told him I could not make him prices until I saw what kinds of trees he wanted, and we figured out the number it would take for his land, then he made the selection of the various kind of trees he wanted and I made a memorandum of them on my order blank. He said in ten days or two weeks he could give me a definite answer. A while after that I was in the neighborhood below there and came by to see Jenkins, and he was plowing on a riding cultivator in a small patch near the house, and I just filled out the dates, etc., on the bottom of the order and he said: "I have decided to give you my order on one condition;" that is, that later on if his crops, hogs, etc., did not look any too good he would have the right to countermand the order. I told him I would do that with him, *and he then signed the order*. I told him that we generally sent in those orders to the nursery in September and August

and if he should countermand I would like for him to do so before that time. I don't suppose he ever countermanded the order as the trees were shipped out to DeLeon,' meaning thereby to say and swear and thereby saying and swearing that in truth and in fact the said Jack Jenkins had agreed to buy the said order of trees from said nursery, and had signed the order for the same in his presence at the time and in the manner as above set out; which said testimony was material to the issue under investigation. Whereas, in truth and in fact, as he, the said W. D. Carpenter, then and there well knew, the said Jack Jenkins had not agreed to make said order, and had not signed his name to said written order at the time and in the manner above set out nor at any time whatsoever and had not agreed with the said W. D. Carpenter that he would buy said trees, and which said statements so made by the said W. D. Carpenter, before and to said grand jury was deliberately and wilfully made and was deliberately and wilfully false, as he, the said W. D. Carpenter, then and there well knew."

It is seen therefrom that it is alleged that the material inquiry before the grand jury and necessary for the due administration of the criminal laws, etc., was whether one Jack Jenkins in said county and State, on or about May 26, 1915, did sign and make a written order purchasing 1650 apple trees and ordering same for fall delivery from the Hoffman Nurseries, promising and agreeing therein to pay $165 therefor upon the delivery to him as specified in said contract.

It is well settled that in an indictment for perjury alleged to have been committed before a grand jury the allegations must show that the matter under investigation before the grand jury was a violation of law; in other words, that what the grand jury was investigating when the alleged false testimony was given before it was the violation of some law. (Gallegos v. State, 50 Texas Crim. Rep., 190; Pigg v. State, 71 Texas Crim. Rep., 600; Meeks v. State, 32 Texas Crim. Rep., 420; Weaver v. State, 34 Texas Crim. Rep., 554; McMurtree, 38 Texas Crim. Rep., 521; Higgins v. State, 38 Texas Crim. Rep., 539, and other cases.) We do not overlook that the Meeks, McMurtree and Higgins cases, supra, were expressly overruled in McDonough v. State, 47 Texas Crim. Rep., 230, on one point. But the point on which they were overruled is not the point for which they are now cited. Now, this indictment nowhere alleges that it was a violation of any law, nor was it any violation of any law, for Mr. Jenkins to sign and make the written order purchasing said apple trees, etc., which the indictment alleges was the material inquiry before the grand jury. In fact, what is alleged in the indictment as the material inquiry before the grand jury as shown by this record was not the material inquiry at all. Instead, the material inquiry was in substance whether appellant had signed Jenkins' name to said written order without his authority, knowledge and consent so as to be a forgery by him of said Jenkins' name to said order. Jenkins might or might not have made and himself

signed the order. Whether he did, or did not, would be no offense. But it would be an offense for appellant without Jenkins' permission, authority, etc., to sign, or forge Jenkins' name to said order. In reality that was what was under investigation. As an incident thereto whether Jenkins signed his own name thereto was proper to be determined. Even if he did not, no crime was committed, unless someone else signed his name thereto without his authority, etc.

There is no specific allegation that the grand jury was investigating whether an offense had been committed in Comanche County. It would be better, if not necessary, for the indictment to so specifically allege. The grand jury has no right to investigate whether an accused may have committed a crime in some county other than the one in which it was organized and sitting—(rape excepted). While Jenkins lived in Comanche County appellant lived in Erath. If appellant forged Jenkins' name he might have done so in Erath and not Comanche.

In an indictment for perjury, it is always necessary to allege distinctly and clearly what the false testimony was which is made the basis of the offense and traverse it. It may be proper, as a preliminary matter and to show the connection in which the false testimony was given, to also allege some of the other testimony the witness gave at the time. But such other testimony should not be confused with that which is made the basis for perjury. Thus, in this case, the indictment alleges that appellant "did deliberately, wilfully and corruptly say and testify, in substance and effect that,"—then gives what he testified as to Jenkins' ordering some pecan trees, etc., and that Jenkins told him about his twenty-three or twenty-four-acre tract of land he wanted to plant in apple trees, etc., etc. It seems none of this introductory testimony may have been intended to be made the basis of perjury. In fact, the statement of facts shows most of this preliminary testimony was actually true. The allegations just above quoted, alleging appellant "did deliberately, wilfully and corruptly," etc., would indicate that the whole of the following testimony of appellant was made the basis of perjury. Whereas, as stated, most of this testimony was actually true, and it must not have been intended that all of his testimony copied was the false testimony which was made the basis of perjury. This should be made clear and distinct if another indictment is preferred.

It would not be necessary to copy, in the indictment, the alleged forged order; but if not copied, it would be necessary to allege such a description of it as to clearly identify it, and that such description should correspond with the written order when it is offered in evidence.

Some of appellant's other objections to the indictment may be well taken, but we deem it unnecessary to take them up and discuss them. Doubtless, if another indictment is preferred, such objections will be considered by the pleader, and when necessary, met by proper and clear allegations.

In our opinion, the indictment is fatally defective. Hence, the judgment is reversed and the cause ordered dismissed.

*Dismissed.*

MORROW, Judge.—I concur in the disposition of the case. If a new indictment is found, it would be best to copy therein the alleged forged order.

DAVIDSON, Presiding Judge.—I agree with conclusion of Judge Morrow as above stated.