VICTOR ZIEGLER V. THE STATE.

No. 15189.   Delivered May 25, 1932.
Reported in 50 S. W. (2d) 317.

The opinion states the case.

*Chas. E. Coombes,* of Stamford, and *Thomas B. Ridgell,* of Brecken-
ridge,. for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is false swearing; the punish-
ment, confinement in the penitentiary for two years.

It is alleged in the indictment, in general terms, that appellant made
a false affidavit.   Following this averment, the affidavit is set out in the
indictment in haec verba, as follows:

"County of Stephens, State of Texas.

"Before me, a Notary Public in and for Stephens County, State of
Texas, personally appeared Dr. Victor Ziegler and being duly by me
sworn and on his oath deposes and says:

"That he is now drilling a well in section 193, E. T. R. R. Land in
Shackelford County, Texas, and that said well is now drilling at a depth
of over 1,000 feet, and furthermore

"That he has spudded a well in the N. E. Quarter of section 162,
E. T. R. R. Land in the same County, further

"That both said wells are the wells referred to as wells No. 1, and 2
in the certain escrow agreement between said Victor Ziegler and Coleman
H. Mulcahy, a copy of which escrow agreement is now in the First
National Bank of Breckenridge and that this affidavit is made for the
purpose of authorizing the said Bank to pay over to said Victor Ziegler
the sum of One Thousand Dollars ($1000.00) due on reaching a depth

of 1000 feet in well No. 1, and One Thousand Dollars due on spudding well No. 2.

"Victor Ziegler.

"Sworn to and subscribed to before me, this 31st day of May, 1930.

" Julia Heinisch,

"Notary Public, Stephens County, Texas."

Immediately following the affidavit the indictment contains a traverse clause, which reads as follows: "Whereas, in fact and in truth, no well had been spudded in the N. E. Quarter of section 162, E. T. R. R. Land in Shackelford County, Texas, and well No. 2, referred to in said escrow agreement had not, in truth and in fact, been spudded in, which said false statement and affidavit was not required by law, and was not made in the course of a judicial proceeding, and the said Victor Ziegler knew the same to be false at the time he made it."

Appellant moved to quash the indictment on the ground that there were no averments embraced therein explanatory of the escrow agreement referred to in the affidavit. Further, appellant specifically excepted to the indictment on the ground that it was repugnant and contradictory, in that in the traverse clause one of the two statements embraced in the indictment was alleged to be false, whereas in the first part of the indictment it was averred, in solido, that both statements were false.

It is observed that the affidavit and traverse clause refer to an escrow agreement between appellant and Coleman H. Mulcahy, it being alleged in the indictment that a copy of such agreement was on file in the First National Bank of Breckenridge. Further, the affidavit contains an averment to the effect that it was made for the purpose of authorizing the bank to pay over the sum of $1,000 to appellant for "spudding in" well No. 2. The agreement was not set out in substance or in detail. It would appear that it would be necessary to construe such agreement in determining the meaning of the statement alleged in the indictment to be false. In a sense the affidavit embraced in the indictment is incomplete without reference to the escrow agreement. Hence the proper construction of the escrow agreement became material. It is the general rule that when a written instrument enters into an offense as a part or basis thereof, or when its proper construction is material, the instrument should be set out in the indictment. Rudy v. State, 81 Texas Crim. Rep., 272, 195 S. W., 187, and authorities cited. The opinion is expressed that the indictment should have set out at least the substance of the escrow agreement, in order that the relation of such agreement to the affidavit might be apparent, from a reading of the indictment.

Adverting to the second ground of the motion to quash, it is observed that the affidavit contains a statement to the effect that appellant had drilled well No. 1 to a depth of more than 1,000 feet, and that he had "spudded in" well No. 2. In the traverse clause of the indictment it is

averred that well No. 2 had not in truth and in fact been "spudded in." There was no averment to the effect that well No. 1 had not been drilled to a depth of more than 1,000 feet. If the statement of facts should be consulted, it is observed that well No. 1 had been drilled more than 1,000 feet. Hence the statement in the affidavit that such was a fact was not false. The whole affidavit is presented in the indictment as a false instrument. There appears to be no particular assignment as to the statement that appellant had "spudded in" well No. 2. The following cases appear to support appellant's contention that the second ground of the motion to quash should have been sustained: Morris v. State, 47 Texas Crim. Rep., 420, 83 S. W., 1126; Ross v. State, 40 Texas Crim. Rep., 349, 50 S. W., 336; Brown v. State, 40 Texas Crim. Rep., 48, 48 S. W., 169; Harrison v. State, 41 Texas Crim. Rep., 274, 53 S. W., 863; Adams v. State, 49 Texas Crim. Rep., 361, 91 S. W., 225; Carpenter v. State, 81 Texas Crim. Rep., 298, 195 S. W., 199; Dennington v. State, 98 Texas Crim. Rep., 332, 265 S. W., 198.

It was the theory of the state, given support in the testimony, that appellant had not "spudded in" well No. 2, in that there had been no abrasion of the soil by the drill. It was appellant's theory that he had complied with the terms of the escrow agreement, in that one of his employees had placed some machinery on the lease, had used a crow-bar in digging a hole four or five feet deep, and had placed a bit in the hole. It appears to have been undisputed that one of appellant's employees had started a hole in the manner last mentioned, and had advised appellant of such fact. Touching the question as to whether appellant had actually "spudded in" a well, expert oil men, testifying for the state, declared that the phrase "spudded in," as employed and understood by oil operators, denoted the first abrasion of the soil by the drill, or that of the first entrance of the drill into the ground after the equipment for drilling had been placed in position. On the contrary, expert oil operators, testifying for appellant, were of the opinion that the things appellant had done in relation to well No. 2 constituted a "spudding in" of said well. It appears, further, from the testimony that appellant had actually drilled well No. 1 to a depth of more than 1,000 feet and was entitled to $1,000 for this work. Appellant testified that after receiving the $1,000 on his affidavit that he had "spudded in" well No. 2, he used the money to pay the drillers he had employed. It appears from appellant's testimony that he had been advised by his employee that he (the employee) had "spudded in" well No. 2. It seems that appellant held a degree from Columbia University, he having specialized in geology. It further appears that he had located the leases in question and entered into contracts to drill wells, as shown by the escrow agreement on file in the bank.

We have made the foregoing statement of the testimony as preliminary to mentioning the suggestion made in the motion to quash, that the term

"spudded in" should have been explained in the indictment by innuendo averment. It is clear that the construction of such phrase was important, and that in drawing the escrow agreement it became important to determine what was reasonably contemplated by the parties when they employed the phrase "spudded in," it being apparently a trade or technical term. 17 Cyc., p. 80. In view of the fact that there was an issue as to what the phrase meant, the opinion is expressed that if another indictment be returned, the pleader should, by innuendo averment, explain the meaning of the phrase "spudded in," as contemplated by the parties executing the agreement. What we have said relative to this matter is not to be taken as holding that it is necessary in an indictment charging false swearing to allege and prove the materiality of the false statement, as is required in an indictment charging perjury. On the contrary, in cases of false swearing it is unnecessary to plead and prove the materiality of the false statement. Dennington v. State, supra. In Wilson v. State, 49 Texas Crim. Rep., 496, 93 S. W., 547, Judge Henderson used language as follows: "We understand any false oath as to something past or present, affords the basis of false swearing. It is not necessary that it be on a material question, as in perjury; it is simply requisite that there be a false affidavit to a fact past or present."

The judgment is reversed and the prosecution ordered dismissed.

*Reversed and prosecution ordered dismissed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.