# COURT OF APPEALS OF TEXAS.

## AUSTIN TERM, 1888.

---

### No. 5684.

### W. S. KELLER *v.* THE STATE.

1. PLEADING—IDEM SONANS.—BAD SPELLING does not vitiate an indictment or information if the meaning of the allegation is unmistakable. Appellant was charged by information with disturbance of the "inhabitance" of a public street. *Held* that the word *inhabitants* was obviously intended, and the two words are idem sonans.
2. DISTURBANCE OF THE PEACE—EVIDENCE.—Persons residing in residences which abut upon a public street are inhabitants of such street within the meaning of Article 314 of the Penal Code. Evidence, therefore, was admissible to prove that there were inhabited residences abutting upon the street and adjacent to the locality at which the disturbance occurred. Whether the defendant's conduct was calculated to disturb the inhabitants of the street was for the jury alone to determine.

APPEAL from the County Court of Montague. Tried below before the Hon. Griffin Ford, County Judge.

The information in this case charged that the appellant, "on the twenty-eighth day of February in the year of our Lord, one thousand eight hundred and eighty-seven, with force and arms, in the county and State aforesaid, did wilfully and unlawfully go into a public street in the town of Montague, and use loud and vociferous language, curse and swear, in a manner calculated to disturb the inhabitance thereof; contrary," etc. Being tried and found guilty, a fine of five dollars was assessed against him by the jury.

J. H. Timberlake, for the State, testified that on February 28, 1887, he saw the defendant and C. C. Frost standing in the street, opposite the defendant's residence. Defendant was

talking in a loud tone of voice, and what he said was distinctly heard by witness, who was seventy-five or eighty yards distant from the defendant. Witness heard the defendant say to Frost: "You are a dirty low down stinking dog." The defendant repeated the same words several times, and dared Frost to draw his pistol or "cutter." This was in the town and county of Montague, Texas. Witness heard Frost's voice also, but could not distinguish what he said to the defendant. When witness first saw them on that occasion, Frost was going east, and the defendant was following a short distance behind Frost. Each of them had his right hand in his pocket.

C. C. Frost, for the State, testified that on February 28, 1887, he and his little daughter were in the street opposite the house of the defendant, when the latter came out into the street. Witness told the defendant that he, witness, could not pay him that money, but that he was going to work on the railroad and would pay it in a week or two. Defendant replied that that would do him no good, for his property would be sold for taxes before that time. Witness answered that he was in the same fix, and did not know that defendant was worse off than himself. Defendant then said that there was another matter he wanted to speak to witness about, and said that he wanted to know why witness levied on that gin in his, defendant's, absence. Witness replied that he had an execution against defendant, and thought he had to make the levy. The defendant then, speaking in a loud tone of voice, called witness a "liar," and witness stopped and put his hand on his hip pocket. Defendant called witness a "d—d liar," a "God d—d liar," and a "dirty stinking dog;" and witness drew his pistol and shot at defendant. During their altercation the defendant spoke in a loud tone of voice, and witness in a low tone. The defendant, when he cursed and swore as stated, was in a public street in the town of Montague, county of Montague, State of Texas, and was about twenty-five or thirty yards from the private houses of A. L. Matlock and W. A. Morris, with whose yard fences the public street ran parallel. There was no person in the street at the time of the cursing and swearing, except the witness, his little daughter, and the defendant, but witness saw Timberlake, who was about seventy-five or eighty yards distant, and also saw Sam Morris a short distance off in his father's yard. Witness was passing the defendant's house when the defendant called him. When the defendant spoke to witness about levying on the gin, wit-

ness replied that he wanted no difficulty, and asked defendant to go with him to town, and probably they could get some one to settle the matter for them. Witness started and the defendant followed him some ten or twelve steps behind. From the place where the defendant first stopped witness, it was about sixty yards to where the shooting occurred. During the time the defendant and witness were traversing that distance, the defendant continued to abuse the witness as already stated, calling him repeatedly a liar, a God d—d liar, and a low down dirty dog.

The defense offered no evidence.

*Stephens & Herbert,* for the appellant.

*W. L. Davidson,* Assistant Attorney General, for the State.

WILLSON, JUDGE. Bad spelling does not vitiate an indictment or information, if the meaning of the allegations are unmistakable. (Irvin v. The State, 7 Texas Ct. App., 109; Hudson v. The State, 10 Id., 215; Brumley v. The State, 11 Id., 114.) "Inhabitance," as used in the information in this case, was evidently intended to mean "inhabitants;" and furthermore the two words are *idem sonans.* We hold the information to be sufficient.

Persons residing in residences which abut upon a public street, are, in our opinion, "inhabitants" of such street, within the meaning of article 314 of the Penal Code. It was, therefore, not error to admit evidence proving that there were residences abutting upon the street, and near to where the disturbance occurred, and that said residences were inhabited. No error was committed in refusing to give the special charge requested by defendant with reference to such evidence. That the defendant may have violated the statute by disturbing the inhabitants of private residences, as well as by disturbing the inhabitants of the street, by the same act, can not bar a prosecution and conviction for the latter phase of the offense.

Whether or not the conduct of the defendant was calculated to disturb the inhabitants of the street was a question solely for the jury to determine, and that question was fairly and plainly submitted to the jury by the court's charge, and the evidence sustains the finding of the jury thereon.

Believing that there is no error in the conviction the judgment is affirmed.                                           *Affirmed.*