## M. B. McDonough v. The State.

### No. 3013.    Decided November 2, 1904.

### ON REHEARING, June 11, 1905.

#### 1.—Perjury—Wilful, False Statement Sufficient—Rule Before Grand Jury.

Where the court has jurisdiction to make the inquiry in general terms, any deliberate and wilfully false statement of a witness in answer to questions concerning the same, would constitute a good assignment for perjury; and this, although the question might be too general to form the basis for the impeachment of the witness. Overruling Meeks v. State, 32 Texas Crim. Rep., 420; Higgins v. State, 38 Id., 539; McCurtry v. State, Id., 521.

#### 2.—Same—Rule in Civil Cases—Deliberate, False, Answer Sufficient.

Where in the trial of a civil case, a witness was asked whether he had been previously injured by any railroad, and had ever made any claim therefor, to which he deliberately, willfully and falsely answered in the negative, he cannot afterwards avail himself of the generality of the question to defeat a prosecution for perjury, and an indictment assigning such question and answer as perjury is good upon motion to quash; and this even if the question to witness was not sufficiently definite, as to time, place and persons to afford a basis for his impeachment.

#### 3.—Evidence—Statement of Defendant—Relevancy—Exception.

It was competent for the State to prove that appellant had stated to the witness about the time he instituted his suit for personal injuries, out of which grew the prosecution for perjury, that he had not been injured on any other railroad. However, the objection to this testimony was not reserved in due time by an exception.

#### 4.—Same—Legitimate Matter of Inquiry.

Where defendant was tried for perjury for having falsely deposed, in a civil case, that he had not been injured by any railroad previously, and had made no claim for such injuries, it was permissible for the State to show that defendant had testified to such former injuries in said civil suit on cross-examination; and this, although defendant had not testified in his trial for perjury.

#### 5.—Same—Bill of Exceptions Must Show Testimony Objected to.

Where defendant was tried for perjury, for having falsely stated in his deposition in a civil suit for personal injuries, that he had never been previously injured by any railroad, his parol testimony in said suit was admissible, although not assigned as perjury, to shed light upon his intent. However, the bill of exceptions does not disclose what such parol testimony was.

#### 6.—Bill of Exceptions—No Ruling Certified.

Where the court, in approving a bill of exceptions, certifies that no ruling was had with reference to certain testimony objected to by appellant, with relation to his flight and concealment, the matter is not properly presented for review. Besides such testimony would be admissible.

Appeal from the district Court of Tarrant.    Tried below before Hon. Irby D. Dunklin.

Appeal from a conviction for perjury; penalty, three years imprisonment, in the penitentiary.

The opinion states the case.

No brief for appellant has reached the reporter.

*Howard Martin,* Assistant Attorney-General, and *O. S. Lattimore,* for the State.— We make this statement, that whether McDonough intended to swear falsely and corruptly, that he had never been injured on any other road than the Fort Wayne and Pittsburg and that he had never made any claim or settlement or received any money other than the value of his time—was a question of fact, dependent upon all of the circumstances and not on the form of the question. The question as to whether the sworn statement be deliberately and knowingly false depends on the knowledge and intent of the maker of the statement and not on the form of the interrogatory. Regardless of the form of the question asked or of the false statement made in answer thereto, the true test to determine whether a thing be perjury or not is: Did the party deliberately make a false statement knowing it to be such and does the proof show such to be the fact beyond a reasonable doubt. To make the question of a perjurer's guilt depend on the knowledge of the interrogator of the matter inquired about, as exhibited in the particularity of his question would be to remove all possibility of punishing for perjury or false swearing one who wilfully, deliberately, intentionally and knowingly swears falsely in answer to a question, or about any matter in general, unless the questioner know enough about the facts inquired about at the time of putting the question to frame a question setting forth time, place, persons, etc. This is hardly ever true. In thousands of cases witness take the stand who are comparative or total strangers to the attorney questioning them. It is practically impossible in these numerous instances to frame such questions to adhere to the ruling announced in this case; and it appears to us to take a large part of the strength and virility out of the perjury statute. It is carrying the doctrine casually mentioned in the Meeks case and not a decisive point therein, entirely too far. McLeod v. State, 75 S. W. Rep., 522; Stanley v. State, 74 S. W. Rep., 318; Williams v. State, 28 Texas Crim. App., 301; Fry v. State, 36 Texas Crim. Rep., 582; Commonwealth v. Bonner, 97 Mass., 587; State v. Carey, 65 N. E. Rep., 527; Hernandes v. State, 18 Texas Crim. App., 134; People v. Dowdall, 82 N. W. Rep., 810; U. S. v. Hampton, 101 Fed. Rep., 714; Powell v. State, 37 S. W. Rep., 322; Terry v. State, 30 Mo. 368.

HENDERSON, JUDGE.—Appellant was convicted of perjury, and his punishment assessed at confinement in the penitentiary for a term of three years.

It is only necessary to consider one assignment of error, which questions the action of the court refusing to quash the indictment. The indictment shows that the alleged perjury was committed on the trial in the district court in a certain case, wherein appellant was plaintiff and the Gulf, Colorado and Santa Fe Railway Company was defendant, the same being for damages occasioned by alleged personal injuries sustained while plaintiff was in the employ of said railroad. In that suit plaintiff's deposition was taken, and among other things he was asked,

the following questions: "Were you ever hurt on any railroad prior to being hurt by the Gulf, Colorado and Santa Fe, in August, 1902? Again, if you have testified that you were injured on any railroad or in any other way injured prior to being hurt in August, 1902, please state as to such injuries, the name of the railroad you were injured on; the time and place of injury, what was the cause of your injury, describe fully and particularly the circumstances under which you came to be hurt, what was the character of defect, if any, which caused your hurt. Again, did you ever make any claim against any of the companies in whose service you were when injured. If so with which of the companies did you make settlement? How much did each one of them pay you and when? What was the nature and extent of your injuries? What portions of your body were affected or hurt? Explain fully. How long were you troubled or did you suffer as a result of such injury or injuries," etc. To which questions, appellant replied, substantially, as follows: "No, sir, except he was hurt on the Pittsburg, Ft. Wayne and Chicago; and further, that he made no claim against any other company for injuries received by him. This testimony is alleged to have been material in said cause, and it is traversed as false. The indictment specifically alleges that appellant had previously in the same year (1902) set up a claim against the Missouri, Kansas and Texas Railway Company of Texas, for damages for personal injuries, and had been paid by said company the sum of $800 on said account. Motion to quash was predicated on the generality of the question asked, to wit: that said question or questions failed to specify any date when appellant should have worked for any railroads, and failed to give any date when defendant made any claims to any railroad, and fails to state the name of any railroad, the defendant worked for; and because the indictment setting out the traverse of each of said allegations, and that appellant's testimony was false, and that he knew it to be false, fails to give any dates or specify the times and dates when the defendant worked for any railroads, and when he was hurt by any railroads, and when he presented any claim to any railroad, or did any of the acts mentioned in said indictment. We have no doubt that the matter intended to be inquired about was a material issue in said cause then on trial. If appellant (plaintiff) had admitted that he had sustained injuries on other roads, and had made claim for damages on said account, the circumstances thereof may have been used to discredit him before the jury. If he had denied having made a claim against the other roads for damages, had the questions been properly propounded, it would have afforded the subject of impeachment. But we understand the rule to be, both in civil and criminal cases, when a collateral matter of this character is inquired about, the question or questions propounded should call the witness' attention to the circumstances; that is, the time, place and persons, and possibly the other circumstances involved in such transaction. The question should be so definite that, if the witness denied the matter inquired about, he may be impeached thereon. As we said in Meeks v.

State, 32 Texas Crim. Rep., 420: "The time, place and sufficient of the circumstances to call the attention of the party to the transaction under investigation should have been stated, so that he might have known of what he was to testify. Certainly, if answers to such questions, could not constitute a predicate for the impeachment of the witnesses, it ought not to be sufficient to authorize his conviction of one of the most infamous of all felonies." McMurtry v. State, 38 Texas Crim. Rep., 521; Higgins v. State, 38 Texas Crim. Rep., 539. Recurring to the facts of this case, the questions state no particular time when appellant should have been hurt, or injured by any other railway; called the witness' attention, to no particular railroad, that he had presented any claim against for personal injuries; nor did the questions point to any incident connected with any claim against any other railroad, which might have served to call his attention thereto. The questions were indeed so general that we scarcely apprehend any one would claim a negative answer thereto, would furnish the basis for the impeachment of the witness. Indeed, if we recur to the record, we find that this same witness, when he was subsequently placed on the stand on the trial of the case, and his attention was directed to his claim against the M. K. & T. Ry. Co. of Texas, that he then stated he recalled the transaction, but did not think of it when he answered his depositions. This case is in itself an allustration of the wisdom of the rule above cited in perjury cases. Because the court refused to quash the indictment, the judgment is reversed and the prosecution ordered dismissed.

*Reversed and dismissed.*

BROOKS, JUDGE (dissenting).—I think the indictment is good. To hold that the question upon which perjury is predicated is not sufficiently explicit to put appellant upon notice is carrying the rule too far. To ask one if he ever had a leg broken upon any railroad and sued said road for damages by all the rules of reason and law is amply sufficient and explicit upon which to predicate perjury, and such question is no more explicit than the allegations in the indictment here.

### ON REHEARING.

#### January 11, 1905.

HENDERSON, JUDGE.—At the recent Tyler Term this case was reversed, a majority of the court holding that the question which elicited the answer of the witness was too general in terms. We followed Meeks v. State, 32 Texas Crim. Rep., 420; McMurtry v. State, 38 Texas Crim. Rep., 521; Higgins v. State, 38 Texas Crim. Rep., 539. In those cases it appeared that the test was that the question should be so definite, involving time and place, that the answer to the same would constitute a predicate for the impeachment of the witness, and unless this was so, the answer would not afford an assignment for perjury. The State presents an able brief on motion for rehearing, and asserts, among others,

the following propositions: The form of question asked is at most but a circumstance entitled to whatever weight the jury may give it in the particular case in determining from the whole case what was the real intention of the party in making the alleged false statement. The knowledge and intent of the maker of a false statement determines whether the same be perjury and not the form of the question. To make the form of the question control, regardless of the intentional falsity of the answer, is to make the innocent questioner the burden bearer of the guilty answer, and takes the force and strength out of the perjury law.

Recurring to the statement of the case, as contained in the original opinion, it will be seen that McDonough, as plaintiff, had brought a suit in the district court of Tarrant County, for damages caused by a fall from the top of a freight car, the result, as claimed, of a defective brake-staff. The railroad company took his ex parte deposition, and asked him, among other things, if he had ever been injured on any railroad. If so, when and where, and state the circumstances. And also state if he had ever claimed damages for any such injury; and if he had received any sum of money for any such injuries. If so, how much and from what railroad. In answer to this question, he stated that he had never claimed any damages from any railroad company; and denied receiving any sum of money from any railroad company. This was the predicate on which the alleged perjury was based. The truth of his statement was controverted, and the evidence on the part of the State showed that the same was false; that he had claimed to have been injured from falling from the top of a box-car, caused by a defective brake-staff, for which he claimed damages from the M. K. & T. Ry.; and that he received $800 from said railroad in settlement; that this occurred some six or eight months before the suit in question.

We understand the contention of the State to be, that the Meeks case, and those following, do not announce a sound legal principle in perjury cases. If it be conceded that they do, that those were cases involving an investigation before grand juries, and have no application to a case of this character, which was a trial in a civil case, before the district court. We understand further that, in attacking the Meeks case, the State contends that the authorities cited by counsel for appellant, and on which the decision is apparently based, do not sustain it. In this, we believe the State is in error. Mr. Bishop (Cr. Law, vol. 2, sec. 1034), in discussing the materiality of the assignment for perjury as affected by the form of the question, uses this illustration, from an English case: "Where the testimony of a witness related to what was done on a particular Sunday, and he said in general terms that it did not occur on any Sunday between the two dates, which included the one in question, Pollack, chief baron, ruled that it could not sustain an indictment for perjury, because his attention ought to have been called to the particular day on which the transaction took place as to which he was to

speak." Another illustration given by him, however, seems to contravene the above.

We believe on principle (and which appears to be supported by all the authorities) that the important question is, was the statement of the witness, regardless of the manner in which it was adduced, material in the determination of the question under consideration? Of course, the indictment must charge the jurisdiction of the court to make the examination, and ask the questions. In a proceeding before the grand jury, Article 428, Code Criminal Procedure, clothes that body with whatever jurisdiction it possesses so far as asking questions of witness is concerned. That is, "the grand jury in propounding a question to a witness, shall direct the examination to the person accused or suspected; shall state the offense with which he is charged; the county where the offense is said to have been committed; and nearly as may be, the time of the commission of the offense. But hould the jury think it necessary, they may ask the witness in general terms whether he has knowledge of the violation of any particular law by any person, and if so by what person. And see article 429. Evidently, in alleging jurisdiction of this tribunal, the indictment should charge, first, that they were examining some particular case, the same being an offense under the laws of the State, etc.; and secondly, if they were not examining some particular offense, that body is authorized to inquire of the witness in general terms, whether he has knowledge of the violation of any particular law by any person; and if so, what person. So that, in the latter contingency, it should be shown in the pleadings that the violation of some particular law by some person was being inquired about; and that certain questions were asked in regard thereto. In such case, while the questions must be pertinent as to the violation of the particular law, it can be general as to the person involved. When an indictment recites the matter under investigation, and that the witness was questioned as authorized by law, and he wilfully and deliberately answers falsely, he would be subject to prosecution for perjury. For instance, if a witness, under the terms of this statute, shall be asked, if he knows of any violation of our statutes with reference to murder, and he answer that he does, and tells the jury as to a homicide claimed to have been witnessed by himself, and details circumstances to show it was murder; and names the person involved; and this is shown to be false, unquestionably he would be subject to prosecution; and in our opinion, equally so, if he answer that he does not know of any murder committed, and it be shown that this was deliberately and wilfully false, and in fact he did know of a murder, he would be subject to prosecution for perjury. This is in harmony with the views as announced, by the Supreme Court of Alabama, in Banks v. State, 78 Alabama, 14. In that State the statute confines the grand jury to examination of witnesses to particular acts or transactions, or imputed crimes. They are only authorized to ask general questions, with reference to violations of the gaming laws. The doctrine announced in that case is, that the grand jury must be investigating a case over which they have

jurisdiction, in the mode pointed out by their statute; and if they transcend their power and authority in the premises, the answer of the witness will not afford a predicate for perjury. Our statute is not altogether like the Alabama statute. The grand jury would have authority to inquire of a witness as to the violation of any particular statute; and if the witness answers that he know of a violation of the particular statute, he can then be required to tell the person or persons involved in such violation. The court having jurisdiction to make the inquiry, in general terms, any deliberate and wilful false statement of a witness in answer to questions concerning the same, would constitute a good assignment for perjury; and this, although the question might be too general to form the basis for the impeachment of the witness. The contrary doctrine announced in Meeks v. State, followed by McMurtry and Higgins' cases, is hereby overruled.

The case here before us, however, is not a grand jury case; but in volves the allegation of perjury committed in the trial of a civil case in the district court for damages. The case itself and the jurisdiction of the court are properly averred, and the evidence was undoubtedly admissible as original testimony, and we believe also because the witness could have been impeached upon it on his denial. The witness does not state, in answer to the question, though general in terms, that he does not remember; nor does he ask to be furnished with particulars of the transaction; nor did he claim a privilege accorded by law, and refuse to answer. But he apears to have unhesitatingly (and in accordance with the evidence contained in this record), after due reflection, answered no, that he had not been previously injured on any railroad, and claim damages therefor. Of course, the generality of the question might be a circumstance that his evidence was not given deliberately and wilfully; that it was given under a mistake or misapprehension. But we do not believe that the witness having boldly answered a question, and answered it falsely, as well as deliberately and wilfully, can afterwards avail himself of the generality of the question, to defeat a prosecution for perjury. Otherwise, in the language employed in the argument for the State, "the innocent questioner would become the burden bearer and shield of the guilty perjurer." Aside from the authorities heretofore referred to, we know of none which announce the doctrine, that before perjury can be assigned on a false statement, the question must be so definite as to time, place and persons involved, as to afford the basis for the impeachment of the witness, in case he make a denial. On the other hand, the authorities are numerous to the effect, that any case, where the court has jurisdiction to make the inquiry, and questions are asked of a general character, upon material issues, either involved in the case itself, or to discredit the witness, and such witness answers falsely, and it is shown that this is deliberate and wilful, his answer will afford the basis for a prosecution for perjury. Williams v. State, 28 Texas Crim. App., 301; McLeod v. State, 75 S. W. Rep., 522; Stanley v. State, 74 S. W. Rep., 318; State v. Carey, 65 (Ind.) N. E. 527.

This is the only matter discussed in the original opinion. But appellant has a number of other assignments, which we will now discuss.

We believe it was competent for the State to prove by witness Carlock that appellant stated to him, about the time the suit was instituted for personal damages, that he had not been injured on any other railroad. This would tend to show the statement upon which perjury was assigned, and that it was deliberately made. Besides, the bill is approved with the explanation that, after the jury was re-called, no objection was made to the evidence. Appellant should have then reserved an exception.

Appellant also objected to the testimony adduced from the witness Carlock, to the effect, that in the trial of the civil case, on cross-examination by defendant's attorneys, and after they had produced some papers and handed them to plaintiff (McDonough) for identification, appellant then stated he had received an injury from the M. Q. & T. Ry. at or near Denison, and detailed the circumstances with reference to it. This was objected to on the ground that it was not competent, defendant had not testified, and it was for the impeachment of the defendant. This testimony, it seems to us, was a part of the case, and a legitimate matter of inquiry. From the State's point of view it might tend to show the falsity of appellant's statement.

We also believe it was competent to prove by C. K. Lee the matters detailed by McDonough in his cross-examination at the trial of the civil case. While perjury was not assigned on any statement made at the trial by appellant, his parol testimony delivered during said trial, tended to shed light upon his intent, as to his testimony in the deposition on which the assignment of perjury was based. Besides, the testimony of C. K. Lee as to what defendant did state, is not shown in the bill.

We also believe it was competent to show all the circumstances detailed by witness Hamil Scott, which occurred between him and McDonough at a boarding house sometime subsequent to the trial. It is competent to show flight, to show concealment by appellant of his name and identity. We do not believe the circumstances indicate the arrest of appellant at that time. The testimony of Ed Brown was admissible on the same line. While the witness did not accurately identify McDonough, we think his identification was sufficient to authorize the testimony. The objection to the testimony appears to be based on the want of sufficient identification. However, the court, in approving the bill, says no ruling was had on the above matter. We think it was competent to show, as heretofore stated, what McDonough testified on the trial of the civil case. His evidence on that trial served to shed light upon his intent and motive in testifying in the deposition, on which the charge of perjury was predicated. The motion for rehearing is accordingly granted, and the judgment is affirmed.

*Affirmed.*