GAT HARDEN v. THE STATE.

No. 4946.        Decided April 23, 1919.

1.—Perjury—Indictment—Materiality of False Statement.

Where, upon trial of perjury, defendant contended that the indictment must not only allege the materiality of the false statement made before the grand jury, but must go further and allege that the defendant, or some other person, was in fact guilty of some crime against the laws of this State in the matter about which he falsely testified, the same is untenable and the indictment was good without such allegation.

2.—Same—Rule Stated—Perjury—Material Facts.

The law intends to punish the makers of false statements regarding the material facts in proper inquiries, no matter what becomes of the investigation or litigation, or whether it be developed that the matter charged is wholly baseless or absolutely true, and it is not necessary to allege in the indictment that the accused in said investigation was guilty of a crime.

3.—Same—Indictment—Allegation of Name—Misnomer—Surplusage.

Where, upon trial of perjury, one paragraph in the indictment alleged the name Minnie Bardshaw, and in other parts of the indictment Minnie Bradshaw, as the woman with whom defendant committed adultery, which he denied in his testimony before the grand jury, such misnomer may be eliminated as surplusage; besides, such minomer was not fatal in the indictment for perjury. Following Earl v. State, 33 Texas Crim. Rep., 570 and other cases.

4.—Same—Venue—Indictment.

Where, upon trial of perjury, defendant objected to the indictment and proof that matters were set out and testified to which are alleged to have occurred in a county other than the one in which the grand jury was sitting, before which the alleged perjury was committed, but the record showed that the material question was whether defendant committed adultery with a woman in the county of the prosecution, the fact that he carried her from such county to a rescue home in another county, would not in anyway prevent these facts from being material as to what he did in the county of the prosecution, and there was no reversible error.

5.—Same—Voluntary Statement—Evidence.

Where, upon trial of perjury, the testimony showed that defendant made a statement before the grand jury voluntarily, there was no error in the

court's refusal of a requested charge that the jury should not consider this statement unless the same was freely and voluntarily made; the court's charge properly protecting the rights of the defendant.

**6.—Same—Sufficiency of the Evidence.**

Where, upon trial of perjury, the evidence was sufficient to sustain the conviction, there was no reversible error.

**7.—Same—Indictment—Rule Stated—Pleading.**

It is not necessary in an indictment for perjury to allege therein that defendant or another was guilty of the offense of adultery where the material inquiry, as set out in the indictment, was before said grand jury at the time defendant came before it whether or not defendant and a woman not his wife lived together and had carnal intercourse or had habitual carnal intercourse without living together, and that the grand jury had jurisdiction to make such inquiry.

**8.—Same—Declarations of Defendant—Voluntary Statement—Duress.**

Where defendant contended that his declaration before the grand jury upon which the indictment for perjury was based were not freely and voluntarily made and therefore not admissible in evidence against him, but the record on appeal showed that they were voluntarily made, and were admitted without objection; and the court charged the jury that such declarations must have been made deliberately and willfully before the jury could convict the defendant, there was no reversible error; besides, under the statute the question as to whether the alleged false statement was freely and voluntarily made cannot be raised, unless such statements are made under duress.

Appeal from the District Court of Hood. Tried below before J. B. Keith, judge.

Appeal from a conviction of perjury; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Dear & Zweifel, M. L. Arrington,* and *Bradley, Burns, & Hinter,* for appellant.—On question of insufficiency of indictment; Weaver v. State, 34 Texas Crim. Rep., 554, and cases cited in the opinion.

On question of misnomer in indictment: Milontree v. State, 30 Texas Crim. Rep., 152; Carnes v. State, 53 id., 490; Hawkins v. State, 57 id., 152; Haygood v. State, 51 id., 618.

On question of voluntary statement: Paris v. State, 35 Texas Crim. Rep., 93; Cortez v. State, 43 id., 383; Knight v. State, 55 id., 351; Blecher v. State, 161 S. W. Rep., 459.

*E. B. Hendricks,* Assistant Attorney General, for the State

LATTIMORE, JUDGE.—In this case appellant was tried in the District Court of Hood County for the offense of perjury, and from a judgment of conviction brings the case before us on appeal.

The first complaint of the appellant is as to the sufficiency of the indictment, of which he complained in a motion to quash, mo-

tion in arrest of judgment, request for peremptory instructions, an special charge No. 7, all substantially presenting the same contention. The charging part of the indictment in the case reads as follows:

"Whereupon it then and there became and was a material inquiry before said grand jury and necessary for the due administration of the criminal law of said State and for the ends of public justice whether in said county and State on or about the 13th day of February, A. D. 1916, the said Gat Hardin, a man, and Minnie Bradshaw, a woman, not his wife, did then and there live together and special charge No. 1, all substantially presenting the same conthere lawfully married to another person, then living, and it further became and was a material inquiry before said grand jury whether in said county and state on or about the day and date last above written the said Gat Hardin, a man, and Minnie Bradshaw, a woman, not his wife, did have habitual carnal intercourse with each other without living together, he being then and there lawfully married to another person then living, and it further became and was a material inquiry before said grand jury, and necessary for the due administration of the criminal law in said State and for the ends of public justice whether said Gat Hardin, after placing one Minnie Bradshaw in a certain house and place conducted by G. C. Morris and his wife, Mrs. G. C. Morris, in the city of Fort Worth, in Tarrant County, Texas, the said place then and there being a rescue home for fallen women, did represent and state to said G. C. Morris and Mrs. G. C. Morris that he, the said Gat Hardin, was S. L. Johnson, and that said woman so placed by said Gat Hardin in said rescue home was named Mamie Johnson and whether the said Gat Hardin did then and there in said City of Fort Worth, Tarrant County, Texas, after placing said Minnie Bradshaw under the name of Mamie Johnson in said rescue home did on or about the 18th day of August, 1916, take said Minnie Bradshaw from said rescue home and return with her to said rescue home the following day thereafter and whether the said Gat Hardin did on or about the 18th day of September, A. D. 1916, take said Minnie Bradshaw from said rescue home in said Fort Worth and return with her to said rescue home the following day thereafter," etc.

The indictment further proceeds to set forth that Gat Hardin swore that he did not at any time or place within two years have sexual intercourse with Minnie Bradshaw, and that he did not tell Mr. or Mrs. Morris that his name was S. L. Johnson, nor that Minnie Bradshaw's name was Mamie Johnson, nor that she was his sister, and that he did not remember taking her away from the rescue home in Fort Worth, conducted by the Morrises and keeping her away all night on two occasions, but that he took her to picture shows from their house, always bringing her back the same night. The indictment further charges that all these statements

were material and were false, and then sets out the traverse as to each of these matters.

Appellant's motion to quash is as follows: I. "Because, said indictment fails to charge all of the essential elements which are necessary to constitute the crime of perjury in that the said indictment, among other things, attempts to set out the essential elements which, in law, constitute the crime of adultery but, in the charging part thereof it fails to set out and allege some of the elements which, in law, constitutes said offense. II. "Because the said indictment is duplicitous, indefinite and uncertain in that it is so drawn that it does not set out and allege many of the essential elements which are necessary to constitute the crime of perjury. III. "Because, many of the allegations in said indictment wherein it is sought to allege the essential elements of perjury, allege facts and circumstances that are absolutely immaterial and the testimony thereon, if admitted in evidence before a jury, could serve no purpose except to prejudice the minds of the jury against the defendant and would not and could not be of any probative force in establishing the offense of the perjury sought to be established in this case on the part of the State. IV. "Because, said indictment is defective, duplicitous and uncertain in that, it alleges and sets out facts and circumstances that are charged to have taken place in a county other than that over which this court has jurisdiction. V. "Because, said indictment contains allegations and charges of acts and conduct alleged against the defendant that took place in a county beyond the jurisdiction of this court and acts and conduct which, if they did constitute an offense under the laws of this state, another and different court would have jurisdiction over the same and the said alleged act and conduct do not constitute any offense over which this court or any other court of Hood County, would have jurisdiction and the said allegations and the proof thereunder, in case the same should be admitted in evidence before a jury on the trial of this case, could and would serve no other purpose except to prejudice the minds of the jury against the defendant, in an undue manner and in a manner not warranted by law inasmuch as the defendant is entitled to a fair and impartial trial under the Constitution and laws of this State, upon legitimate testimony and such testimony only as is properly admissible under an indictment for perjury. V. "And especially does he move the court to strike out and hold for naught the allegations and statements in said indictment wherein it alleges certain conversations between the defendant and the prosecuting witnesses, Morris and wife, and wherein it alleges certain acts and conduct on the part of the defendant in Tarrant County, Texas, because said transactions would and are immaterial under the indictment in this case, could not be the basis of perjury, and immaterial, and, if such proof should be admitted on the trial of this case, it could serve no pur-

pose except to prejudice the minds of the jury against the defendant.''

Appellant presents concretely the substance of his motion to quash, and his other objections to the indictment, in the form of a proposition, which is as follows:

''Before a party can be legally convicted of the offense of perjury committed before a grand jury, the indictment must not only allege the materiality of the defendant's false statements made before such grand jury, but must go further and allege that the defendant, or some other person, was in fact guilty of some crime against the laws of this State about which he falsely testified and such indictment must set out and allege the constituent elements of such crime,'' and a statement of the ground of his contention, which is as follows:

''Our contention is, that in order for this indictment to be good, it must have been alleged therein that the defendant not only made the false statements alleged therein, but it must have been alleged that he was guilty of adultery with Minnie Bradshaw in one of the statutory modes, and that the constituent elements of said offense should have been alleged.''

It will be noted that the motion to quash points out no specific defect in the indictment, and we will accept the proposition and statement of his contention above set out as presenting appellant's real contention in all of his objections presented as above stated, and based on the insufficiency of the indictment. He contends that the indictment must not only allege the materiality of the false statements made before the grand jury, but that the indictment must go further and allege that the defendant, or some other person, was in fact guilty of some crime against the laws of this State in the matter about which he falsely testified.

We cannot agree to this contention. If such were the law, perjury might be committed in all causes where grand juries did not find indictments, and in all cases before courts where the accused was acquitted, and the State in such event would be helpless to prosecute, because it could not allege in the indictment for perjury that the accused, or any other person, was guilty in the matter about which issue was joined at the time of the alleged perjury. The law intends to punish the makers of false statements regarding the material facts in proper inquiries, no matter what becomes of the investigation or litigation, or whether it be developed that the matter charged is wholly baseless or absolutely true. We know of no authority, and have been cited to none, holding as appellant here contends. We have carefully examined those authorities cited in support of this proposition in appellant's brief, but according to our understanding none of them justify any such contention.

The Gallegos case, 95 S. W. Rep., 123, holds the indictment bad, because it appears upon the face of the same that the matters the

grand jury were investigating would, if true, not amount to violation of the law.

The Weaver case, 34 Texas Crim. Rep., 554, also cited, holds the indictment bad because the materiality of the alleged false statement is not shown. However, this court said: "Investigations of grand juries should only be directed to violations of law. Statements of persons testifying before such bodies, unless material in some respect to such investigation, cannot be the basis of perjury. . .. The materiality of such evidence when given must be measured by the subject matter under investigation."

The Scott v. State, 75 Texas Crim. Rep., 396, 171 S. W. Rep., 234, case holds the indictment bad because its contents show that the matter under investigation did not amount to a violation of the law; the matter investigated being alleged to be whether the party played at a game with dice. Playing games with dice is not an offense against the laws of this State; betting on such games being the act made penal.

The Buller case, 28 S. W. Rep., 465, merely holds bad an indictment which fails to directly allege the materiality of the alleged false statement, or to plead facts from which such materiality would appear.

The McMurtry case, 43 S. W. Rep., 1010, cited, hase been expressly overruled.

The Miller case, 65 S. W. Rep., 908, cited, is the law, but in our opinion inapplicable. This court there said: "If the indictment had alleged that the testimony given before the grand jury was material to some issue. this general allegation might have been sufficient. In the absence of this character of allegation, then enough of the facts and circumstances of the matter inquired about by the grand jury should have been stated to manifest .its materiality."

The Rosebud case, 98 S. W. Rep., 858, is wholly in line with the others just examined, in deciding only that there is no sufficient allegation or showing of the materiality of the alleged false statement to the matter inquired about.

The McDonough case, 84 S. W. Rep., 594, also cited, holds the indictment in that case good, and there is nothing in the case to support the proposition of appellant.

We have carefully examined these authorities cited and others to ascertain if there be any authority for holding that the indictment should allege, that in the matter under investigation it must be charged that the accused is guilty, but have found no authority so holding.

Appellant further contends that the indictment is bad, and that the evidence showing intimacy on the part of appellant with Minnie Bradshaw should not be admitted, because in one paragraph of said indictment, in alleging that were the material matters of inquiry before the grand jury when he appeared and testified, it was

15—T. C.

stated that it was material whether Gat Harden and Minnie *Bard-shaw*, a woman, did live together and have carnal intercourse, etc.; appellant's contention being that Bardshaw and Bradshaw are not idem sonans. We might content ourselves by saying that the paragraph containing the misnomer and calling the woman Bardshaw can be eliminated from the indictment as surplusage without marring or affecting its sufficiency. The next paragraph of the indictment charges that, it further became and was a material inquiry before said grand jury whether Gat Harden, a man, and Minnie Bradshaw, a woman, not his wife, did, in Hood county, Texas, have habitual carnal intercourse with each other without living together, he, the said Gat Harden, having a lawful wife then living; which allegation fully sets out that the material matter under search was the offense of adultery committed by the appellant and Minnie Bradshaw.

However, we wish to dispose of this objection to the indictment on broader grounds. Our statutes only require such certainty in indictments as will enable the accused to plead the judgment rendered thereon in bar of any subsequent proceeding. See Art. 453, C. C. P. Our decisions hold, and correctly we think, that the indictment should set out the particular offense charged with such certainty as that a presumptively innocent man seeking to know what he must meet may ascertain fully therefrom the matters charged against him. Earl v. State, 33 Texas Crim. Rep., 570; Brown v. State, 26 Texas Crim. App., 540. A name may be more or less material in an indictment, according to the facts therein set forth, and when used to designate ownership as in theft, or the assaulted party, in those pleadings where the name is material and occurs but once, or where same represents a substantial element of the offense charged, as is the case in each of the authorities cited by appellant in support of this contention, a misnomer might be fatal, unless the same was *idem sonans,* but in our opinion where a name is used many times in a pleading, and appears once spelled differently from the way it appears in the remainder of the pleading, then the rule of law applicable to errors and mistakes in grammar and spelling would apply, and the misnomer must appear to be such matter as might fairly mislead or confuse the person charged in the indictment. In the instant case the name of the woman with whom the adultery is supposed to have been committed appears more than twenty times as Minnis Bradshaw, and only once as Minnie Bardshaw, this being a manifest clerical error causel by transporting two of the letters in said name. But as it seems to us too clear for dispute that in this state of case the accused could not have been misled, or in any way prejudiced by such clerical error, we see no error in the action of the lower court in overruling the objection both as to the indictment and to the admission of the evidence of the appellant's intimacy with Minnie Bradshaw. Hudson v. State, 10

Texas Crim. App., 215; Hale v. State, 7 Texas Crim. App., 44; Ervin v. State, 7 Texas Crim. App., 109; Keller v. State, 25 Texas Crim App., 325; Bailey v. State, 63 Texas Crim. Rep., 584.

Mr. Justice Ramsey, in Lewis v. State, 55 Texas. Crim. Rep., 167, uses the following language, which meets our approval:

"An inspection of the indictment in which the name of the assaulted party is used, would, if said name stood alone, look like it was spelled 'Coots;' but an examination of the entire indictment shows that the 'a' in the name of the assaulted party is identical with all the other 'a's'—fourteen in number—in the indictment. There was, as stated, no question as to the name in fact of the alleged injured party; there was no possibility of any doubt as to the identity of the person charged to have been assaulted. Appellant could not have been surprised, misled, or in doubt as to the name of the person and the identity of the person upon whom the alleged assault was made. There is no defense based upon the 'weightier matters of the law,' and practically none in the testimony. There is no complaint of the charge of the court. The defense is wholly technical, and, as we believe, hypercritical. It is elementary that in indictments and proceedings in law and the most solemn and important contracts, that they are not to be avoided, either for bad spelling or bad grammar. Shall we hold that, because the district attorney does not write with the absoulte precision of copper-plate, or steel-engraving, dot all his 'i's' or cross all his 't's,' that the convictions of the courts shall be set aside and the labor of the law rendered unavailing? We do not think this sort of doctrine ought to have any standing in a court of justice."

It is also objected to the indictment and proof that matters are set out and testified to which are alleged to have occurred in Fort Worth, in a county other than the one in which the grand jury was sitting before which the alleged perjury was committed. The material inquiry relative to which the alleged false statements were made was as to the adultery of Gat Harden and the woman in Hood County. Bearing on this question, it was alleged to be material that Harden carried her to Fort Worth, placed her in a rescue home, and told the proprietor that his name was Johnson, and that her name was Johnson, and that she was his sister, and also that he visited her there, and took her from this place, keeping her away twice all night.

That these matters occurred in a county other than Hood County would not in any way prevent them from being material as showing what he had done in said county. A man may be charged with theft in Hood County, and it would hardly be seriously contended that his possession of the alleged stolen property in Tarrant County, or his statements there about his acquisition of the same, or any other fact occurring in Tarrant County shedding light on the theft in Hood County, would not be receivable as evidence on the trial in

Hood County. We find no error in the action of the court as indicated.

We have carefully examined appellant's objections to the court's charge, but for the reasons hereinabove given we think the charge correct in submitting to the jury the matters occurring in .Tarrant County as bearing upon the falsity of the statements made by him before the grand jury in Hood county.

Appellant complains that the court refused to give a special charge that the jury would not consider for any purpose the statement made by the appellant before the grand jury of Hood County unless the same was freely and voluntarily made. The authorities cited by appellant in support of this proposition are cases in which there was evidence presented on the trial of a denial by the party charged of the warning given, or of the voluntary character of the statement made, in which case the courts correctly hold the question of the voluntary character of such statement must be submitted to the jury, but comparing the cases, giving rise to the opinions cited, with the instant case, it seems to us to demonstrate that those authorities are not the law of this case. This appellant was not subpœnaed by the State to go before the grand jury, or asked in any way to appear there, but went freely and voluntarily of his own accord, and after making his appearance and offering himself as such witness, and before he testified, he was fully warned by the district attorney of the consequences of his giving testimony, and told that it would be used against him upon any trial of himself that might follow such investigation. He then testified denying the guilt of himself and the woman, and denying the matters alleged to have occurred in Tarrant County, and when these matters were written out and presented to him he seems to have signed them without any demurrer whatever. The court fully cared for his interest in the main charge, and told the jury that if such statement was made under a mistake, or agitation or excitement, or unless the district attorney had warned the appellant that he did not have to make any statement unless he desired to do so, and that any statement he made might be used against him in any trial which he might have thereafter concerning the matters about which the statement was made, and unless thereafter such statements were made that they could not consider said statements at all. We have carefully considered each objection raised by appellant, and there appear none that would justify us in reversing this case.

An examination of the record shows that appellant was a man living at home with his wife, and that he took a young lady about seventeen years of age into his home and there debauched her; that when she became pregnant he took her to a rescue home in Fort Worth, paid her expenses. and visited her there both going under an assumed name; that after the birth of her child he carried her back to his house where his wife was, who had been in ignorance

of the matters mentioned. The grand jury began an investigation of the offense of adultery between the parties, and while they were deliberating the appellant appeared before them and gave his version of the matter. The indictment for perjury followed and his conviction. No substantial objection is made here to the fairness of the trial or justness of the conviction, or the amount of punishment affixed.

The judgment of the trial court is affirmed.

*Affirmed.*

ON REHEARING.

April 23, 1919.

LATTIMORE, JUDGE.—Appellant comes before this court with a forcible motion for rehearing, supported by a supplemental argument, all of which have been carefully reviewed by us, as well as the original brief. Two matters are strongly urged as erroneous in our former opinion; to-wit: (1) holding the indictment sufficient; (2) holding that there was no error in refusing to give the special charge hereafter noticed; both of which contentions will be discussed in this opinion.

Learned counsel again insists that the indictment is insufficient as it does not allege that appellant was guilty of the offense of adultery, and incidental to this, further contends that no indictment for perjury before a grand jury, is sufficient unless same alleges that the accused or some one was in fact guilty in the matter under investigation by such grand jury.

In order to be accurate and that no mistake may be made, we state the contention of appellant on this point in the very language of the learned counsel, as taken from their argument in support of their motion: "To be good, it must have been alleged therein that the defendant not only made the false statements shown in said indictment, but such indictment must have gone further and alleged that the defendant, or some other person, was in fact guilty of some crime against the laws of this State, in order to render any testimony given by him before the grand jury, material in the sense required by law;" and counsel insists that the Bench and Bar of this State are in error, if this contention be not the law, and that this court owes it to them, to either admit error in its former ruling, or to overrule the decisions heretofore rendered which appellant contends so hold. This court frankly states that if it knew of any decision so holding, same would be very promptly overruled, but that the court is not aware of any decision in consonance with this position of appellant.

At the risk of repeating what we have said in our former opinion, and because of our great respect for each of the learned counsel representing appellant, we will again discuss this matter.

As set out in the indictment in this case, the material inquiry before said grand jury at the time appellant came before it was stated to be, whether or not appellant and a woman not his wife, lived together and had carnal intercourse in Hood County, Texas, he, appellant, being then and there married to another person then living; and also whether or not appellant and a woman not his wife, had habitual carnal intercourse with each other in Hood County, Texas without living together, he appellant, being then and there lawfully married to another person then living.

The two things alleged to be the matter under search before said grand jury are the two ways in which adultery may be committed in this State, and every essential element of the offense was fully set out in each of said two methods. It is thus plain that the matter under investigation by said grand jury was one, which if sustained by facts, would be a violation of the criminal law of this State. If the facts had shown that appellant lived with the woman and had intercourse with her, he having a lawful living wife, he would have been guilty and such investigation was properly within the scope of the grand jury's jurisdiction. If such facts had established that he had habitual carnal intercourse without living together with her, he would have been guilty of adultery and the inquiry regarding same was properly cognizable by the grand jury. Having these statements in mind, let us go further and say that if the appellant had been merely suspected and charged before such grand jury with the matters stated, the jurisdiction of that body to investigate such charge would have been as certain and complete, even though an innocent conclusion was the result, as it would have been had he been indicted for a dozen acts of adultery with said woman.

Under our system, it is the business and duty of the grand jury to investigate charges made against persons suspected of violations of our criminal laws to the end that such violations may be legally formulated and charged, if the evidence presented makes it reasonably certain that upon the trial of such suspect in a court of competent jurisdiction a conviction would result. To properly protect the sanctity, dignity and purity of such grand jury investigations, it is clearly necessary that witnesses to all matters within the proper scope of such investigations, shall tell the truth under the pains and penalties of perjury. Inasmuch as there are limitations placed by our laws upon the powers and jurisdiction of the grand jury, it must be understood that the matter under search before that body, must fall within the scope of such limitations, else the investigation would be *ultra vires* and the entire proceeding without foundation in law. We therefore observe that the matter under investigation, if sustained by facts, must be a violation of the criminal law of the land. If the investigation be of such nature, the demand of truth from the witnesses is as imperative when the conclusion resulting there-

from, is that the suspect is not guilty and that no indictment should be returned, as it would be if every step of the investigation was so eloquent of guilt that no other conclusion could follow than the return of an indictment.   The question throughout is a jurisdictional one, and the test of the indictment in all the cases cited by learned counsel was as to the character of the charge under investigation in the particular case, and the test was not in any of those cases the guilt of any party or suspect.   In those cases referred to by counsel the courts held the indictments bad, not because some person was not guilty of the charge under search, but because in each instance the grand jury or court had no authority to make the particular investigation for the reason in each case that the charge —the matter—the thing under search, was one which was innocent of the law, that is, not such as would constitute a violation of a criminal law, even if true and borne out by facts.

Recurring to the instant case, and applying what we have just said it seems plain that if the matter alleged as being under investigation by the grand jury, to-wit; whether appellant lived together and had intercourse with the woman, or whether he had habitual intercourse with her without living together, he being married to another woman then living, was one which, if found by investigation to be true and borne out by facts, should have resulted in an indictment or would have been a violation of a criminal law, then the conclusion is irresistible that it was a matter of which the grand jury had jurisdiction, whether in fact the appellant was thereafter believed by them to be a proper subject of indictment or not, and wholly regardless of whether he was in fact guilty or not.

We but repeat, when we say that the language in the indictment showed that the charge under investigation was one which, if true, would be adultery and the violation of a criminal law of this State, and therefore a matter of which the grand jury had proper jurisdiction.

Appellant further contends that the following special charge should have been given:

"Now comes the defendant in the above entitled cause and requests the court to instruct the jury that unless they find and believe from the evidence that the written statement of the defendant Gat Harden, taken before the grand jury and introduced before you by the State, was freely and voluntarily made, you will consider such statement for no purpose whatever." '

We were in error in our former opinion in passing upon this particular matter, in stating that appellant was not asked to go before the grand jury.   He was not subpœnaed or brought there by any process, but the record shows that he had that morning expressed to the district attorney a desire to see the foreman of the grand jury, and that at the request of some member of the grand jury, a bailiff told appellant to go before that body which he did.

When he appeared before them he was sworn and some questions asked him by the district attorney, whereupon appellant substantially stated that he declined to testify, thereupon the district attorney told him that if his testimony before the grand jury would incriminate him, or if his evidence would be against him in any way, or if he had done anything wrong the telling of which before the grand jury might be the means of getting a bill against him he would not have to testify. Thereupon appellant said he wanted to see a lawyer and was told that the district attorney was one and he said that his testimony would not incriminate him and that nothing he had done with the woman was a violation of the law, that he had done nothing that was wrong and his testimony would not hurt him. The district attorney also told him what he meant by incriminate, and that he did not have to testify and further that if his testimony would incriminate him he could leave the room. Appellant did not leave, but stayed, apparently being desirous of giving his version of the matter. After giving him the statutory warning which was embodied in his written and signed statement, he was asked questions and made a lengthy statement in writing denying all intimacy with the girl and denying in particular the various matters alleged in the indictment. After this statement was reduced to writing it was read over to him. He suggested a number of changes which were made and he then signed said written statement. A number of the details of this written statement are alleged to be material to the main issue before the grand jury and are set out in the indictment.

We further note that when this written statement was offered in evidence by the State it was admitted without objection on the part of appellant.

In this state of the case, after reviewing the authorities cited by the appellant, in our former opinion we held there was no evidence before the trial court sufficiently calling in question the voluntary character of the statements of the appellant to make the issue as to whether they were voluntary or not, a jury question. Upon further examination of the facts, while we conclude that it is without dispute that appellant remained in the grand jury room of his own accord and made and signed a written statement without any sort of compulsion or lack of freedom and further that the charge would have been erroneous for this reason, yet we have concluded that this contention of appellant should be further disposed of for a different and greater reason.

Can one on trial for perjury alleged to have been committed before a grand jury, or a court either, for that matter, have the case decided on the question as to whether the alleged false statement was freely and voluntarily made or otherwise? Is it sound law, reason or right, when one under oath has been even wrongfully required to answer a question, to hold as law the proposition that

by reason of the fact that he answered such question under compulsion, he is thereby licensed to answer falsely? Is it sound to hold that if in such case he be called to account for making a false statement that he may justify and excuse the falsehood upon the sole ground that his speech was not voluntary? It would be a sad day for he administration of the law if a defendant, having placed himself or having been placed in the position of having been ordered or directed to answer, may thus destroy the power and effectiveness of our perjury statute.. Such is not the law.

The men who wrote the perjury statute, stated in chapter 1, title 8 of our P. C. that if a false statement, under an oath required by law, be made deliberately and wilfully the same is perjury. They wrote further that if the statement alleged to be perjury was made through inadvertence or through mistake or any agitation, then same would not be prejury, but there the lawmakers stopped, and there is not a line or a syllable in our written law which, after giving to an accused the benefit of a charge that his act must have been deliberate and wilful, and that it must not have been the result of agitation, mistake or inadvertence, requires the court to go further and tell the jury that unless the alleged statement was freely and voluntarily made it could not be perjury. The paramount inquiry in every case is, what is the truth; and the courts have existed and all legal formatities have been created out of the experience of the years as being the very best means of getting at this one great end. We wish to write here now that one must tell the truth in every judicial proceeding, even when he speaks under compulsion. He has the right under our constitution and law not to speak, under given circumstances which are well understood, and in such case if effort be made to illegally compel him, the courts are ready and willing to accord substantial and speedy relief, but whenever for any satisfactory reason he does speak, then he must speak the truth. We further held that if in any case it be decided that his utterance was wilful and deliberate and was not made under the broad exceptions of our written law, and was false, then this court is unwilling, by judicial construction to engraft any other exceptions upon our procedure then those written by the lawmakers. Especially in this true when we believe that the principle contended for in this special charge is substantially embraced by the exceptions already written into our law. The language used by our lawmakers is that the statement must be wilful and this means that it must emanate from the will of the accused and not from the will of another; and the two words "wilful and deliberate" have been construed to mean that the accused must have known the statement to have been false and so knowing himself have deliberately and wilfully made the same. In the instant case this phase of the case was fully covered by the charge and no complaint is made thereof. What we have said above is not intended to apply to a

case properly embraced under our statute regarding statements under duress.

Believing that no serious error was committed by the court in its former opinion and that the law was properly charged in the case by the trial court and that the indictment was good, the motion for rehearing is overruled.

*Overruled.*