PEOPLE v RICHTER

Opinion of the Court

1. CRIMINAL LAW—CONFESSIONS—VOLUNTARINESS—THREATS—DE-
FENDANT'S CHILDREN.

Removing a defendant's daughter from her and taking the daugh-
ter into juvenile custody and threatening the defendant with
permanent deprivation sufficed to overcome her will and ren-
dered her subsequent confession of a crime involuntary and
inadmissible.

2. CRIMINAL LAW—CONFESSIONS—VOLUNTARINESS—TRUTH.

Questions of voluntariness do not turn on the truth or falsity of
the confession.

3. CRIMINAL LAW—CONFESSIONS—VOLUNTARINESS—THREATS—TIME
LAPSE.

A lapse of a few hours between the time of a threat made to a
defendant by police and the defendant's subsequent confession
to a crime do not suffice to make the confession voluntary; in
fact, a time lapse may cause the threat to become more deeply
imbedded in a defendant's mind.

4. PERJURY—DEFENSES—COMPULSION—EVIDENCE—QUESTION FOR
JURY.

Ruling that threats against the life of a defendant were insuffi-
cient, as a matter of law, to make out a defense of compulsion
to a charge of perjury was error where, when considering the
evidence most favorably to the defendant, testimony showed a
threat to kill the defendant or her daughter by a prison escapee
who was convicted later of first-degree murder and conspiracy
to commit murder, because given this threat, a jury might find
that the compulsion under which the defendant operated was
present, immediate, and impending, and fostered a well-
grounded apprehension of death or serious bodily injury.

---

REFERENCES FOR POINTS IN HEADNOTES
[1–3, 6] 29 Am Jur 2d, Evidence §§ 529, 531, 537, 542–554, 582.
[4, 5, 7, 8] 60 Am Jur 2d, Perjury § 49.

5. PERJURY—DEFENSES—COMPULSION—TIME LAPSE—QUESTION FOR JURY.

A threat occurring three weeks prior to the giving of perjured testimony does not make it impossible, as a matter of law, for the *compulsion* to be present, imminent, or impending, and fostering a well-grounded apprehension of death or serious bodily injury at the time of the perjury; such issue was for the jury.

DISSENT BY ELLIOTT, J.

6. CRIMINAL LAW—CONFESSIONS—VOLUNTARINESS—COERCION—PRESERVING QUESTION.

*A conclusion by the Court of Appeals that a defendant's confession was coerced which was based on hearsay was improper where coercion was not claimed or argued on appeal.*

7. CRIMINAL LAW—DEFENSES—COMPULSION—ELEMENTS.

*There are three elements to the defense of compulsion: a present, imminent, impending threat fostering a well-grounded apprehension of death or serious physical harm; the absence of fault in the circumstances from which the threat arises; and no reasonable opportunity to escape the compulsion and avoid commission of the crime.*

8. PERJURY—DEFENSES—COMPULSION—EVIDENCE.

*The defense of compulsion to the crime of perjury was not available where the threat was three weeks before the perjury and the imminence of danger had passed since an escapist making the threat was gone; the defendant was at fault in the circumstances from which the threat arose since she had aided the person who threatened her in his escape from jail; and where there was a reasonable opportunity to escape the compulsion and avoid commission of the crime in that the perjured testimony was given at a secret grand jury proceeding at which the defendant could have refused to answer under the Fifth Amendment.*

Appeal from Kalamazoo, Raymond W. Fox, J. Submitted Division 3 June 10, 1974, at Detroit. (Docket No. 16454.) Decided August 12, 1974.

Betty Richter was convicted of perjury. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Donald A. Burge,* Prosecuting Attorney, and *Stephen M. Wheeler,* Chief of Appellate Division, for the people.

*Dennis S. McCune,* for defendant.

Before: J. H. Gillis, P. J., and Allen and Elliott,* JJ.

J. H. Gillis, P. J. A jury convicted defendant of perjury. MCLA 767.19d; MSA 28.959(4); MCLA 750.423; MSA 28.665. She was sentenced to six months probation and appeals as of right. On appeal, we reverse.

On August 29, 1971, Richard Cook, a convicted felon and veteran escapist, while awaiting trial on murder charges, hacksawed his way out of the Kalamazoo County Jail. He was assisted in that effort by his cousin, defendant herein. The day after his escape, Cook threatened to murder either defendant or her daughter if she divulged any information concerning that escape. A grand jury, convened three weeks later to investigate Cook's escape, subpoenaed Mrs. Richter. Under oath, she denied having seen or aided Cook. Thereafter, on November 24, 1971, Mrs. Richter was charged with aiding and abetting an escape, a misdemeanor, and released on bond. At the time of her arrest, her ward, whom she had reared since birth and whom she referred to as her daughter, was taken into juvenile custody.

Defendant's testimony on this point is uncontradicted:

"*Q.* You did contact Sergeant Van Welden, is that correct?

---

* Circuit judge, sitting on the Court of Appeals by assignment.

"*A.* Yes, my son did.

"*Q.* And you gave him that full and complete statement, is that correct?

"*A.* Yes.

"*Q.* What prompted you to do that, Mrs. Richter?

"*A.* Well, because the night of the 22nd or 23rd, they arrested me, they took my little girl and my kid got me out on bond the next day, and we went and picked her up at a foster home, and *he told the kid that I had better tell the truth or they were going to take her away from me for good,* so that is why I told it and I thought he said he would help me—no, he didn't say he would help, he said he would do his best so I wouldn't have to lose Sue Ellen.

"*Q.* Who said that?

"*A.* Sergeant Van Welden." (Emphasis supplied.)

Sergeant Van Welden testified that late in the evening on November 24, 1971 defendant's son contacted him because his mother wanted to talk. After midnight, defendant, her son, daughter, daughter-in-law, Sgt. Van Welden, and FBI Special Agent William Downey met for some two hours questioning. At 2:55 a.m. Mrs. Richter signed a statement handwritten by Sgt. Van Welden admitting her participation in the escape plans. Prior to interrogation, Sgt. Van Welden advised defendant of her *Miranda* rights. Defendant asked whether she was entitled to appointed counsel. Sgt. Van Welden stated that because she was charged with a misdemeanor, she had no right to the assistance of appointed counsel. Thereafter, Mrs. Richter's confession was offered to prove she committed perjury, a felony punishable by up to 15 years imprisonment.

The obvious issue is whether the confession was properly admitted in the perjury trial. The trial court, after a *Walker* hearing, held it inadmissible but later reversed itself, finding the statement

"volunteered" and thus outside the ambit of *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966). We cannot agree with that conclusion.

We do not reach the intricate and unresolved question as to whether *Miranda* provides a Fifth Amendment right to counsel apart from the Sixth Amendment. Thus, the mere fact that at the time of trial a Sixth Amendment right to appointed counsel for misdemeanants did not exist may not be controlling in *Miranda* situations. Nor do we consider whether the officer, well aware of her grand jury testimony, was obliged to inform defendant that any statement she made could be introduced in a perjury trial *(i.e.,* that the officer had to inform defendant of the specific charges to be lodged against her).

For we think a more fundamental ground exists to exclude this confession. That analysis applies whether pre- or post-*Miranda.*[1] We think removing defendant's "daughter" and threatening her with

---

[1] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966). Recently, Justice Rehnquist in *Michigan v Tucker,* — US —, —; 94 S Ct 2357, 2363–2364; 41 L Ed 2d 182, 193 (1974), reinterpreting *Miranda* prophylactic safeguards, explained:

"The Court said that the defendant, of course, could waive these rights, but that any waiver must have been made 'voluntarily, knowingly and intelligently.' 384 US at 444; 86 S Ct at 1612; 16 L Ed 2d at 707.

"The Court recognized that these procedural safeguards were not themselves rights protected by the Constitution but were instead measures to insure that the right against compulsory self-incrimination was protected. As the Court remarked:

" '[W]e cannot say that the Constitution necessarily requires adherence to any particular solution for the inherent compulsions of the interrogation process as it is presently conducted.' 384 US at 467; 86 S Ct at 1624; 16 L Ed 2d at 719–720.

"The suggested safeguards were not intended to 'create a constitutional straightjacket,' 384 US at 467; 86 S Ct at 1624; 16 L Ed 2d at 720, but rather to provide practical reinforcement for the right against compulsory self-incrimination."

We will not permit *Miranda* to operate as a constitutional straitjacket in these circumstances.

permanent deprivation sufficed to overcome her will, rendering her confession classically involuntary. The tactic, albeit unusual, has previously been used and reviewed. The United States Supreme Court agrees with us. *Lynumn v Illinois,* 372 US 528; 83 S Ct 917; 9 L Ed 2d 922 (1963). That case reveals:

" ' * * * Then he started telling me I could get 10 years and the children could be taken away, and after I got out they would be taken away and strangers would have them, and if I could cooperate he would see they weren't; and he would recommend leniency and I had better do what they told me if I wanted to see my kids again. The two children are three and four years old. Their father is dead; they live with me. I love my children very much. I have never been arrested for anything in my whole life before. I did not know how much power a policeman had in a recommendation to the State's Attorney or to the Court. I did not know that a Court and a State's Attorney are not bound by a police officer's recommendations. I did not know anything about it. All the officers talked to me about my children and the time I could get for not cooperating. All three officers did. After that conversation I believed that if I cooperated with them and answered the questions the way they wanted me to answer, I believed that I would not be prosecuted. They had said I had better say what they wanted me to, or I would lose the kids. I said I would say anything they wanted me to say. I asked what I was to say. I was told to say "You must admit you gave Zeno the package" so I said, "Yes, I gave it to him."

*    *    *

" ' * * * The only reason I had for admitting it to the police was the hope of saving myself from going to jail and being taken away from my children. The statement I made to the police after they promised that they would intercede for me, the statements admitting the crime, were false.' " 372 US at 531–532; 83 S Ct at 919; 9 L Ed 2d at 925.

The Court said in examining the circumstances:

"We think it clear that a confession made under such circumstances must be deemed not voluntary, but coerced. That is the teaching of our cases. We have said that the question in each case is whether the defendant's will was overborne at the time he confessed. (Citations omitted.) If so, the confession cannot be deemed 'the product of a rational intellect and a free will.'" (Citations omitted.) 372 US at 534; 83 S Ct at 920; 9 L Ed 2d at 926.

We are mindful that questions of voluntariness do not turn on the truth or falsity of the confession. *Rogers v Richmond,* 365 US 534; 81 S Ct 735; 5 L Ed 2d 760 (1961).

Like the petitioner in *Lynumn,* defendant here apparently had little prior experience with the criminal law, and no reason not to believe the police officer had ample power to execute his threat. We do not think the lapse of a few hours time between the threat and the confession sufficed to make the confession voluntary; in fact, a time lapse may well have caused the threat to become more deeply imbedded in defendant's mind. Nor did the presence of her children during questioning cure the taint. We think the psychological coercion practiced here, the threat to permanently remove defendant's child if she did not tell the truth, was no less devastating to the exercise of free will than physical torture, and no less excusable. *Payne v Arkansas,* 356 US 560; 78 S Ct 844; 2 L Ed 2d 975 (1958). On balance, the defective *Miranda* warnings, in the context of this case, did not overcome the coercive atmosphere. The confession should have been suppressed. *Cf. People v Griner,* 30 Mich App 612; 186 NW2d 800 (1971).

Next, defendant claims that the trial judge erred

reversibly by ruling at the close of defendant's case that threats against her life were insufficient as a matter of law, and took the matter away from the jury. Defendant admitted she had perjured herself, but offered a defense of duress. The court ruled that since three weeks had elapsed, the threat was not sufficiently contemporaneous to create a legal defense to the charged crime.

Again, we disagree. On these facts, a jury case was made out. *People v Merhige,* 212 Mich 601; 180 NW 418 (1920), states the applicable rules for duress. However, what constitutes present, immediate, and impending compulsion depends on the circumstances of each case. Considering the evidence most favorably to defendant, testimony showed a threat by Cook to kill defendant or her daughter if she divulged any information. Cook told defendant that if he was unable to kill her, his friends would. The fact that Cook was convicted later not only of first-degree murder but conspiracy to commit murder offers some indication that this was more than an idle threat. Given this threat, a jury might find that the compulsion under which defendant operated was present, immediate, and impending and fostered a well-grounded apprehension of death or serious bodily injury. We think the trial court erred in removing this matter from the jury's consideration.

*People v Kelly,* 51 Mich App 28, 30; 214 NW2d 334, 335–336 (1973):

"There is no evidence that the defendant was negligent in putting himself in the position of being imminently threatened. The crucial question in regard to the defense of duress was not the defendant's negligence, but *whether the alleged compulsion was present, imminent, impending, and fostering a well-grounded apprehension of death or serious bodily injury."* (Emphasis supplied.)

We do not think that a threat occurring three weeks earlier makes it impossible, as a matter of law, for the *compulsion* to be present, imminent or impending, and fostering a well-grounded apprehension of death or serious bodily injury. The issue was for the jury.

In light of our disposition, other allegations of error are rendered moot.

Reversed and remanded.

ALLEN, J., concurred.

ELLIOTT, J. I dissent.

### The Coercion

The conclusion that the confession was coerced is based on one sentence of defendant's trial testimony. It is hearsay; what she said the child said the detective said. It sounds like another lie. It was uncontradicted because it first came after a suppression hearing (at which coercion was not claimed) and after the confession was already admitted and read to the jury.

Coercion has not been claimed or argued in this appeal.

### The Compulsion

There are three elements of the defense of compulsion (see 22 CJS, Criminal Law, § 44, pp 135–136):

(1) a present, imminent, impending threat fostering a well-grounded apprehension of death or serious physical harm;

(2) the absence of fault in the circumstances from which the threat arises; and

(3) no reasonable opportunity to escape the compulsion and avoid commission of the crime.

Let us apply the elements to this case:

(1) The threat was three weeks before the perjury. Why would the escapist care what his cousin said after he was long gone?

(2) Her smuggling of hacksaw blades into jail and hiding the killer in her home for several days with the child, is fault. She lied because of this fault, her guilt.

(3) Grand jury testimony is secret. Defendant could have refused to answer under the Fifth Amendment. She could have said she was too scared and faced contempt. She could have told the truth and asked for protection. Certainly, she did not have to lie.

Perjury is a serious threat to the accuracy and integrity of judicial proceedings. I would not excuse it by a claim of a past threat, a claim almost impossible to disprove. When a lying witness is accused, the best policy should not be more lies.

The sentence was a short term of probation without jail time, fine, or costs. Justice does not require a new trial in this case, in my opinion.