STATE of Minnesota, Respondent,

v.

Alberto ROSILLO, Appellant.

No. 48621.

Supreme Court of Minnesota.

July 6, 1979.

C. Paul Jones, Public Defender, Kathleen Kelly and Evalynn B. Welling, Asst. Public Defenders, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., Thomas L. Fabel, Deputy Atty. Gen., and Norman B. Coleman, Jr., Spec. Asst. Atty. Gen., St. Paul, Arvid Wendland, County Atty., Blue Earth, for respondent.

Heard before SHERAN, C. J., KELLY and SCOTT, JJ., and considered and decided by the court en banc.

KELLY, Justice.

Defendant was tried and found guilty of perjury and he appeals. We affirm.

Defendant Alberto Rosillo acted as an informant for the purpose of apprehending suspected narcotics dealers in Winnebago, Minnesota. As an informant, he made three controlled buys of narcotics under the supervision of local police. Later the police obtained a warrant to search the premises where Rosillo had made the purchases and, when the warrant was executed, several individuals were arrested for possession of drugs. Rosillo and the police had agreed to keep his identity confidential. Because his identity as an informant became known, however, Rosillo agreed to testify, enabling a charge of sale of narcotics to be brought against an individual who could not be convicted without Rosillo's testimony. Rosillo contends that he was pressured into agreeing to testify and he requested protection.

After the police raid, Rosillo was harassed on several occasions. Attempts were made to run him down and he was threatened by armed assailants. To keep Rosillo safe, police gave him a bus ticket to Kansas and a small amount of money, but he could not find a job and returned home in about a month. His father, fearing harm to other family members, had Rosillo move from the family residence. Rosillo contends that he was frustrated in his efforts to bring charges against the individuals who threatened and harassed him. Police, however, claim Rosillo never wanted to bring charges. The police kept him under surveillance for a time without his knowledge, but discontinued it at his request after he became aware he was being followed and said that he would rather take care of himself.

At an omnibus hearing the county attorney requested that one of the narcotics defendants who was then out on his own

recognizance be forced to put up bail because Rosillo was being threatened. Rosillo, who was in the courtroom, rose and denied he was being threatened and the narcotics defendant was not required to put up bond. Rosillo claims that he denied he was being threatened because he had been threatened the day before, he was "juiced up", and he was upset at the city attorney and the sheriff's department.

Shortly after the narcotics raid Rosillo had given a sworn statement before a court reporter concerning the narcotics transactions. He had also testified at the omnibus hearing of the narcotics defendant who was charged with sale. At the trial of the narcotics dealer, however, he denied knowledge of the transactions and claimed the earlier testimony had been "bribed into" him. The charges against the narcotics dealer were dropped and charges of perjury were brought against Rosillo.

At his trial Rosillo admitted that he lied but claimed that he did so because he feared for his life. On this appeal defendant contends that the trial court's instruction to the jury on duress was too narrow because it stressed that the defendant must reasonably believe that "he would be killed immediately if he refused." The instruction also stated that "[t]hreats of future danger to defendant's life is no defense." [1] Defendant argues that "fear of 'instant' death is logically applicable only to the situation in which a person is literally held at gunpoint during commission of the crime." Defendant feels that a broader concept of duress should be applied in a perjury situation where instant death is unlikely due to the surrounding court personnel, spectators, and police officers. It is difficult to justify limiting this broader concept to the crime of perjury, however, and applying it to all crimes would undermine the obvious legislative intent.

The Minnesota duress statute states:

"Except as provided in section 609.20, clause (3) [relating to manslaughter], when any crime is committed or participated in by two or more persons, any one of whom participates only under compulsion by another engaged therein, who by threats creates a reasonable apprehension in the mind of such participator that in case of refusal he is liable to instant death, such threats and apprehension constitute duress which will excuse such participator from criminal liability." Minn.St. 609.08.

The statute does not specifically preclude duress as a defense to perjury. The trial court, however, succinctly stated the policy behind the Minnesota duress statute as follows:

"I think that the whole point of the defense is to relieve someone of conviction of a crime where he had no other choice but to do something or be killed and he believed that. If he had some chance to escape, to seek someone's help, to reflect as to what he should do or shouldn't do, then he can't claim this defense, because, otherwise, everyone would have a defense. You could always work up a defense on practically anything."

---

1. The trial court's instruction on duress states: "Defendant also claims he is not guilty because he acted under duress. A person is not guilty of a crime if he commits the crime only because he reasonably believes from threats by another that he would be killed immediately if he refused. Defendant's fear of instant death must continue throughout the time the crime charged is being committed and it must not have been possible for defendant to withdraw in safety. Threats of future danger to defendant's life is no defense."

This instruction was based upon CRIMJIG 7.01 which states:

"A person is not guilty of a crime if he participates in the crime only because he reasonably believes from threats by another person engaged in the crime that he will be killed immediately if he refuses. The burden of proof on this issue is on the State; unless you find beyond a reasonable doubt that defendant did not act as he did because he had a reasonable fear of imminent death, defendant is not guilty.

"(That threats of future danger to defendant's life have been made is no defense.)

"Defendant's fear of instant death must continue throughout the time the crime is being committed, and it must not have been possible for defendant to withdraw in safety."

Some courts have specifically considered duress in the context of perjury and have concluded it is not a defense. See, e. g., *Hardin v. State*, 85 Tex.Cr.R. 220, 211 S.W. 233 (1919); *Bain v. State*, 67 Miss. 557, 7 So. 408 (1890); *Edwards v. State*, 577 P.2d 1380 (Wyo.1978); *United States v. Nickels*, 502 F.2d 1173 (1974); See, generally, Wharton, Criminal Law and Procedure, § 1327;[2] Annotation, 4 A.L.R. 1319 (1919). But it is possible to conceive of a situation where an individual, fearing a shot through a courthouse window, for example, could reasonably claim a defense of duress. The Minnesota statute would allow the defense in such a situation.

Other courts, acting in the absence of a criminal duress statute, have expanded duress to cover perjury. In *People v. Richter*, 54 Mich.App. 598, 221 N.W.2d 429 (1974) (one judge dissenting), the court recognized that duress was a defense to perjury before a grand jury. The court stated that evidence of a threat against the defendant's life three weeks prior to her testimony made out a jury case as to a duress defense. The A.L.I. Model Penal Code duress provision would also eliminate the requirement of immediacy of the threat to do harm.[3] The current Minnesota duress statute, however, requires immediacy of the threat to do harm.

The jury was properly instructed on the law as it pertains to duress in the State of Minnesota. This court will not overrule the clear intention of the legislature.

Affirmed.

---

2. In part, Wharton states: "A false statement made under fear or compulsion in court under oath constitutes perjury, since an impelling danger is not present, imminent, impending, or unavoidable. The characteristics of duress are not present in testifying in court under oath, since the defendant possesses not only the power and right of protecting himself, but may also appeal to the law to shield him from the threatened danger." Wharton, Criminal Law and Procedure, § 1327.

3. The A.L.I. Model Penal Code duress statutes states:

"(1) It is an affirmative defense that the actor engaged in the conduct charged to constitute an offense because he was coerced to do so by the use of, or a threat to use, unlawful force against his person or the person of another, which a person of reasonable firmness in his situation would have been unable to resist.

"(2) The defense provided by this Section is unavailable if the actor recklessly placed himself in a situation in which it was probable that he would be subjected to duress. The defense is also unavailable if he was negligent in placing himself in such a situation, whenever negligence suffices to establish culpability for the offense charged.

"(3) It is not a defense that a woman acted on the command of her husband, unless she acted under such coercion as would establish a defense under this Section. [The presumption that a woman, acting in the presence of her husband, is coerced is abolished.]

"(4) When the conduct of the actor would otherwise be justifiable under Section 3.02 [relating to justification] this Section does not preclude such defense." Model Penal Code § 2.09 (1962).